JOHN P. SCHMIDT, Appellant, v. J. B. ADAMS, Respondent.

Kansas City Court of Apppeals, June 15, 1885.

1. MASTER AND SERVANT—LIABILITY OF MASTER.—The law is well set-
tled that the master is responsible for the acts of his servants, done
either in the general scope of his employment, or in the pursuit of
his master's special business; and it is wholly immaterial whether
the particular act causing the injury was done in regard of the di-
rections given by the master, or in excess of the directions. The in-
quiry should be, whether at the time the servant commits the injury,
he was engaged in serving the master and carrying out his purpose,
and if so, the master is responsible, even if accomplished in an un-
lawful manner. *Garretson v. Duenckel*, 50 Mo. 104; Wood on Mas-
ter and Servant, section 267.

APPEAL from Vernon Circuit Court, HON. CHAS. G. BURTON, J.

*Reversed and remanded.*

The case is sufficiently stated in the opinion of the court.

JANUARY & SMITH, for the appellant.

I.   The court erred in granting instructions seven and
eight asked by defendant (making liability of defendant
depend upon whether his sons followed his directions).
This is not law.   1. The principal is liable for the *torts*
of the agent committed within the scope of his agency.
2. The principal is liable for the act of the agent, even if
done in a manner expressly forbidden by principal. *Gar-
retson v. Duenckel*, 50 Mo. 104; *Howe v. New Mark*, 12
Allen (Mass.) 49; Story on Agency (8th Ed.) p. 614,
note 1.

W. J. STONE and A. W. VAN SWEARINGEN, for the
respondent.

I.   A parent cannot be held liable for the wilful
trespasses of his infant children, when he neither assents

to nor ratifies them. *Paul v. Hummel*, 43 Mo. 119; *Tifft v. Tifft*, 4th Denio (N. Y.) 175.

II. Conceding that the relation of principal and agent existed between the father and his sons, the agents having expressly violated the orders of their principal, the latter cannot be held liable for the *torts* of the former. *Flanagan v. Alexander*, 50 Mo. 56; *Tucker v. R. R.*, 54 Mo. 177; *First Nat. Bank v. Gay*, 63 Mo. 33; *Tate v. Evans*, 7 Mo. 419; *McCoy v. McKowan*, 26 Miss. 487; *Baker v. Wasson*, 53 Texas 157; *Maddox v. Brown*, 71 Maine 432.

Opinion by PHILIPS, P. J.

This is an action for damages for an alleged injury done to plaintiff's cattle by defendant's servants, in chasing and worrying them with dogs. The case was submitted to a jury for trial.

Plaintiff's evidence tended to show that the cattle were so chased and injured by defendant's servants. The defendant testified that he did instruct his sons to drive plaintiff's cattle out of and away from his field at the time in question, but always cautioned them not to chase the cattle with dogs. On this state of the evidence the plaintiff asked, but the court refused to give, the following instructions:

"The court instructs the jury that the law holds the principal liable for the act of the agent, within the scope of the agency; and if the jury believe from the evidence that defendant, J. B. Adams, instructed his sons to drive plaintiff's cattle out of or away from defendant's field, and that Joseph or Manfred Adams, in pursuance of this instruction, did hiss and incite a dog to chase said cattle at the times mentioned in the petition, and that by reason of said chasing any injury was done to plaintiff's cattle, they shall find for plaintiff as directed in instructions numbered one, two, three and four, even though said Joseph and Manfred, or either of them, did not drive out said cattle in the manner directed, or exceeded their authority."

Numbers one, two, three and four are instructions on the case as contained in the several counts.

"If the jury believe from the evidence that defendant directed his sons Joseph and Manfred to drive plaintiff's cattle away from or out of defendant's field, and that in pursuance of that instruction, said sons or either of them hissed and incited a dog to worry and chase said cattle more than was necessary, then they must find for plaintiff in nominal damages, even though no substantial damages have been proved by plaintiff, and even though said sons, or either of them, did not drive said cattle in the manner directed, or exceeded their authority."

On behalf of defendant the court gave the following instructions *inter alia:*

"In order to recover at all on either count of the petition, the jury must find that the defendant's sons, Joseph or Manfred, dogged the plaintiff's cattle, and that such dogging was done by defendant's direction, and that the injury and death of plaintiff's cattle, complained of in petition, was the result of such dogging.

"If the jury believe that defendant instructed his sons, Joseph and Manfred, not to dog or injure the plaintiff's cattle, then the defendant cannot be held liable for the acts of his said sons in dogging the said cattle, if done against the orders and contrary to the wish and direction of defendant."

The jury having returned a verdict for defendant, the court rendered judgment accordingly; and the plaintiff brings the case here on appeal.

It is clear that the relation of master and servant existed between the defendant and his sons who drove the cattle. They were his special agents, it must be conceded, for the execution of the particular undertaking. The law is well settled that the master is responsible for the acts of his servants, done either in the general scope of his employment, or in the pursuit of the master's special business, and it is wholly immaterial whether the particular act causing the injury complained of was done in regard of the directions given by the master, or in excess of the directions. The inquiry should be, whether at the time

the servant commits the injury he was engaged in serving the master and carrying out his purpose If he was, "the master will be responsible, whether the wrong be occasioned by negligence or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner." *Howe v. Newmark*, 12 Allen 49'; *Garretson v. Duenckel*, 50 Mo. 104.

Wood, in his work on Master and Servant, section 287, sums up the law of this case as follows: "The master having expressly directed the doing of the act, from the wrongful execution of which, injury results, he, in law, is treated as having authorized all that was done by the servant, strictly in furtherance of the end sought by his orders, and with a *bona fide* purpose on the servant's part to execute them; and the rule applicable in cases of agency does not seem to apply. For instance, if a master sends his servant to drive another's cattle out of his lot, and while the servant is engaged in this duty, he carelessly throws a stone at one of them, and lames or kills it, the master is liable for the injury. True, he did not direct the servant to throw the stone, or to injure or kill the cattle; possibly he directed him to drive them out with the utmost care; but by his order to the servant to do the act, he set in motion the agency that produced the mischief, and made it possible for the wrong to be inflicted, and must, in law, be regarded as having authorized it. The question of authority does not depend upon the master's instructions to the servant; is not to be measured by the power expressly delegated to him, but also, by the nature and character of the service with which he was intrusted, and the possible results of leaving the duty to be performed by him."

The great weight of authority amply sustains the text. It follows that the instructions asked by plaintiff should have been given, and those given on behalf of the defendant should have been refused.

The judgment of the circuit court is reversed and the cause remanded for further proceeding in conformity herewith. All concur.