Lamb v. Davidson.

the signature of the father of defendants

PROMISSORY note: alteration: onus: jury question.

WILLIAM A. LAMB, Respondent, v. JAMES R. DAVIDSON, Appellant.

St. Louis Court of Appeals, February 2, 1897.

1. **Replevin:** EVIDENCE: INFERENCE. In replevin, for the recovery of certain cattle, which had strayed into defendant's pasture, and which defendant's daughter, aged twenty-one years, and his nephew, a boy aged fourteen years, left in temporary charge of his farm, refused to surrender, where the court, over defendant's objection, admitted testimony of witnesses for plaintiff to a conversation with another nephew of defendant who told them defendant had said, plaintiff could get his cattle if he paid for them, and had directed his daughter to hold them, and there was evidence that when plaintiff went for the cattle, the boy left his work, rode rapidly to get back ahead of plaintiff, and told him he could not get the cattle unless he paid for them, and so instructed defendant's daughter, the court was warranted in inferring, before admitting the testimony objected to, that the boy was acting under express orders from defendant not to permit plaintiff to take the cattle unless he paid the charges for impounding; and in admitting his statements in evidence against defendant.

2. ———: INSTRUCTION. In such action, an instruction offered by defendant that he was not responsible for the trespass of his minor children and that, unless the jury should believe from the evidence that his nephew and daughter were the servants of defendant at the time the cattle were taken up, they should find for defendant, without

the qualifications that his children, when they committed the tres-
pass, were not in the performance of any service of defĕndant, were
not acting under his directions, but wholly independent of his will,
and that the trespass was not ratified by defendant after its commis-
sion, was properly refused.

*Appeal from the Knox Circuit Court.*—Hon. Benjamin
E. Turner, Judge.   Tried before Hon. C. R.
Fowler, Special Judge.

Affirmed.

*W. C. Hollister* for appellant.

The master is not responsible for the acts of his
servant, unauthorized, unlawful, and out of the course
and scope of his employment. *Lyons v. Martin*, 8 Ad.
& E. L. 512.   See, also, 14 Am. and Eng. Ency, p.
745.

The evidence nowhere shows that Della Davidson,
Essie Davidson, Everet Good, or even Ollie Good, were
the servants of the defendant.   The three first named
were in no sense his agents or servants, and defendant
can not be held responsible for the trespass or torts of
any of them. *Bell v. City of St. Louis*, 17 Mo. 121.
See, also, *Stringer v. R'y*, 96 *Id.* 219.

In replevin, the plaintiff must show that, at the
time the writ was issued, the property was in defend-
ant's possession. *Rogers v. Davis*, 21 Mo. App. 150.
See, also, Kelly's New Treatise, 394, sec. 4; 20 Am.
and Eng. Ency., p. 1058, art. 6.

The parent can not be held liable for the willful
trespass and torts of his infant children, when he neither
assents to nor ratifies them. *Paul v. Hummel*, 43 Mo.
119; *Needles v. Burk*, 81 *Id.* 569; *Halty v. Markel*, 44
Ill. 225; 1 Am. Neg. Cases, p. 438; *Sinclair v. Pearson*,
7 N. H. 219; 1 Am. Neg. Cases, pp. 465–467; *Jackson
v. R'y*, 32 Mo. App. 378; *Snider v. Crawford*, 47 *Id.* 8;
*Stringer v. R'y*, 96 Mo. 299.

*G. R. Balthrope* for respondent.

The acts of defendant's children and nephew, acting in the general course of their employment, as the servants and agents of defendant, in the care, management, and protection of the premises left in their charge, are binding upon defendant. *Garretzen v. Duenckel*, 50 Mo. 104; *Eckert v. Transfer Co.*, 2 Mo. App. 36; *Schmidt v. Adams*, 18 *Id.* 432; *Ridge v. Transfer Co.*, 56 *Id.* 133.

Defendant having left his farm in the charge, care, and protection of his daughters and nephew, became liable for their tortious acts, committed within the scope of their employment, or shown, either directly or inferentially, to have been authorized or ratified by defendant. *Voegeli v. Marble & Granite Co.*, 49 Mo. App. 643; *Schmidt v. Adams, supra; Haehl v. R. R.*, 119 Mo. 325; *Whitehead v. R. R.*, 99 *Id.* 263.

The intention of defendant, in leaving his children and nephew in charge of his farm and chattels, as his agents and servants, will be construed to include all necessary and usual means to be used by them in that behalf. *Samuel v. Bartee*, 53 Mo. App. 587; *Cummings v. Hurd*, 49 *Id.* 139; *Lumber Co. v. Ballentine*, 54 *Id.* 172.

The appellate court will not disturb the verdict and judgment upon the mere ground of weight of or insufficiency of the evidence. *Davis v. R. R.*, 46 Mo. App. 180; *Watson v. Stromborg, Id.* 630; *Dean v. Chandler*, 44 *Id.* 338; *Newland College v. ———, Id.* 19; *Henry v. R. R.*, 109 Mo. 488; *Blanton v. Dold, Id.* 64; *Burk v. R. R.*, 51 Mo. App. 491.

Nor will this court interfere where the judgment and verdict are evidently for the right party. *Estey v. Truxel*, 25 Mo. App. 238; *Jones v. Packet Co.*, 43 *Id.* 399. See, also, *Skeen v. Engine Co.*, 34 Mo. App. 485;

*Sherwood v. Miller*, 37 *Id.* 48; *Frizzelle v. Paint Co.*, 24 *Id.* 529; *Torpey v. Independence*, 24 *Id.* 288; *Hanford v. City of Kansas*, 103 Mo. 172; *McGuire v. Neugent*, *Id.* 161; *Boggess v. R'y*, 118 *Id.*

There was sufficient legal evidence, aside from that objected to, to justify the verdict and judgment, and when such is the case this court will not interfere. *Baker v. Shaw*, 35 Mo. App. 611; *Sebree v. Patterson*, 92 Mo. 451; *Young v. Hudson*, 99 *Id.* 102.

BLAND, P. J.—Replevin begun before a justice of the peace for the recovery of possession of two roan cows of the alleged value of $75, taken to the Knox circuit court by appeal, where a trial before C. R. Fowler agreed upon as special judge, and by jury, verdict and judgment were rendered in favor of respondent for the recovery of the cows and $1 damages. After unsuccessful motions for new trial, and in arrest of judgment, the defendant below, Davidson, appealed to this court.

Lamb and Davidson were the owners of adjoining farms in Knox county. A post and wire fence served as a partition fence between the pasture field of Lamb and a field of Davidson's, in which were a meadow or pasture and growing corn. Davidson's part of this fence was not in a good state of repair, by reason of which the two roan cows of Lamb escaped from his pasture, through this defective fence, onto the premises of Davidson, on the morning of August 1, 1894. On this morning Lamb was absent from home in his neighborhood running a threshing machine. At his home were his wife and some small children. Davidson was also absent from his home, at his father-in-law's, John Howk's, putting up hay. With him at Howk's was his wife and a nephew, Ollie Good, a boy fifteen or sixteen years old, and a member of David-

son's family. Davidson left at his home his two daughters, Della, age twenty-one, Essie, age sixteen, and Everet Good, another nephew, aged fourteen years, also a member of Davidson's family. On the morning the cows got into Davidson's field, Mrs. Lamb and her children undertook to drive them back into Lamb's pasture, but were prevented by Della Davidson and Everet Good, who drove the cows on to another portion of Davidson's farm, and put them into an inclosed pasture, and on that night put them into a pen. On the morning of August 2, Lamb having learned from his family that his cows were detained on Davidson's farm, went to Howk's and informed Davidson that his children had his cows up, and had refused to let his (Lamb's) family have them unless they would pay for them, and that he wanted his cows. Lamb's testimony is that Davidson said, ''Well maybe you can get them cows; I won't have anything to do with it.'' ''I asked him then, says Lamb, to go with me three or four different times or give me an order to get them cows. He said he would not have anything to do with it.'' Lamb then went to Davidson's house and met the boy, Everet Good, and the young lady, Della, who had a revolver in her hand, down at her side. Lamb spoke to them and said: ''Where are my cows?'' ''I came to get my cows.'' The boy replied that ''he could get them if he would pay for them.'' Lamb then went before a justice of the peace, sued out a writ of replevin, and in about two hours returned with the constable, who took possession of the cows, under the writ and delivered them to Lamb. Davidson had not yet returned home. Davidson's testimony is that when Lamb came to Howk's to see him about the cows, that he told him to go home and get the cows; that Lamb insisted on his (Davidson) going with him; that he told Lamb he could not, that he had to put up

hay and could not go. Davidson is corroborated by the testimony of his father-in-law, Howk, and Howk's wife.

Lamb was permitted, over the objection of defendant's counsel, to give in evidence a conversation he had with Ollie Good, as to what Davidson had said to Good about Lamb getting his cows. The witness Maudlin, was also permitted, over the objection of appellant's counsel, to give in evidence a conversation he had with the same boy, as to declarations of Davidson about the cattle. The statements of this boy, as testified to by Lamb and Maudlin were that Davidson said Lamb could get his cows if he would pay for them, and directions from Davidson to Della, his daughter, to hold the cows. This constitutes defendant's assignment of error as to the admission of evidence. We think the facts and circumstances are such as to have warranted the learned judge who tried this case to infer, as he must have done before admitting this testimony, that the defendant sent Good home with instructions not to allow the plaintiff to take the cattle, unless he paid the charges for impounding them. Good was a mere boy, and it is not reasonable that he would have gone away from his work without the consent of his uncle. The plaintiff testified that he caught up with him on the road and cursed him, and told him that he should not have the cattle unless he paid the damage. Maudlin testified that when Good came into the house he told the defendant's oldest daughter not to let the cattle go unless the charges were paid. We think that it is unreasonable that he (a boy) would assume such authority if he was acting without instructions. The fact that he left his work, that he rode very rapidly in order to get back ahead of the plaintiff, that he told the plaintiff that he could not get the cattle only upon certain conditions,

*Margin note: REPLEVIN: evidence: inference.*

and that he so instructed the daughter, all have a strong tendency to prove that he was acting under express orders from his uncle. If so, then his declarations or statements were admissible in evidence against the defendant.

Appellant assigns as error the refusal of the court to give instruction number 2, asked by him, which reads as follows:

"The court instructs the jury that the defendant is not responsible for the trespass of his minor children and unless they shall believe from the evidence that Everet Good and Della Davidson were the servants of the defendant, at the time said cows were taken up, they will find for the defendant."

The first clause of this instruction is correct, as a naked proposition of law, but it is not applicable to this case, without the qualifications that the children when they committed the trespass, were REPLEVIN: in- not in the performance of any service of struction. the parent, were not acting under his direction, but wholly independent of his will, and that the trespass was not ratified by him after its commission. No such qualifications were contained in this instruction, and there was no error in refusing it.

Counsel in his brief has cited us to a number of cases, holding that the master is not responsible for the tortious acts of his servant; referring us to *Sinclair v. Pearson*, 7 N. H. 219; *Jones v. St. Louis, N. & P. Packet Co.*, 43 Mo. App. 398, and a number of other cases of similar import. These *are* a class of cases holding that the master is not responsible for the wrongful acts of his servants, when committed of his own volition and not in the scope of his employment, or when he steps aside from his employment, and of his own will commits a trespass or other injury. But the

law is, when the servant is acting *within* the scope of his employment, and commits a trespass, or other injury, his master is held responsible. *Garretsen v. Duenckel*, 50 Mo. 104; *Perkins v. M., K. & T. Railway Co.*, 55 Mo. 201; *Smith v. Adams*, 18 Mo. App. 432. If the act was within the scope of the servants employment, or is shown either directly or inferentially to have been authorized by the master, he is held responsible, as was correctly held in *Voegeli v. Pickle, M. & G. Co.*, 49 Mo. App. 643. The difficulty which arises in most cases of this sort is in the application of the rule of *respondeat superior*, and not in the rule itself. This difficulty, however, does not arise in this case. If Della and the children were left by Davidson in temporary charge of his farm, or were his servants and acting for him, then it was clearly within the scope of their employment to protect his premises and crops from damage by Lamb's cows, and what they did was within the scope of their employment, and Davidson is responsible for their wrong; or, if they were not acting for him, nor as his servants, he after being notified by Lamb of what had been done, ratified the act (of which there is some evidence in the record) he is responsible.

The judgment is affirmed.    All the judges concur.