JOHN D. KISER, Respondent, v. W. H. SUPPE et al., Appellants.

Kansas City Court of Appeals, October 15, 1908.

1. MASTER AND SERVANT: Definitions: Control. In determining the relation between master and servant the important circumstance is the master's control of the action of the servant, other particulars of the arrangement being immaterial; and he is the master who has the superior choice, control and direction and whose will the servant represents, not merely in the ultimate result of the work but in details.

2. ———: Relation: Independent Contractor: Result. One skilled in an employment who engages to do a particular job for a round sum, reserving to himself the right to determine by what method he shall accomplish the work, is an independent contractor and not the servant or agent of the other party; and on the facts in this case it is held that a person sinking a shaft was an independent contractor and that the plaintiff who worked for him at so much per foot was not his subcontractor but his servant.

3. ————: **Negligence: Independent Contractor: Safe Appliances: Action.** A mine owner in his contract for sinking a shaft agreed to furnish his contractor a cable. *Held*, it was the owner's duty to the contractor and his servant to furnish a reasonably safe cable for the purposes intended, and upon doing so his liability to each of them ceased.

4. ————: ————: ————: ————: ————. *Held*, further, that the independent contractor upon receiving a reasonably safe cable owed his servant the duty to inspect it at reasonable intervals to ascertain its condition and was liable for neglect.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray,* Judge.

REVERSED.

*Maher & Threlkeld* for appellants.

(1)   As has been recently said by this court: On demurrer by defendant to the evidence the facts most favorable to plaintiff will be accepted as the facts in the case supported by substantial evidence. Fassbinder v. Railroad, 104 S. W. 1154; Berry v. Railroad, 124 Mo. 245; Montgomery v. Railroad, 181 Mo. 504; Holloway v. Kansas City, 184 Mo. 29; Moore v. Transit Co., 95 Mo. App. 728.   (2)   Suppe was contractor, Johnson was an independent contractor; and plaintiff was a subcontractee of Johnson, the independent contractor; plaintiff as such subcontractee, cannot maintain negligence against the contractor. Lendburg v. Mining Co., 75 Mich. 84, 42 N. W. 675; Oil Co. v. Church (Tex. Civ. App.), 74 S. W. 797; Coal & Iron Co. v. Gryder's Admrs. (Ky. Ct. App.), 74 S. W. 1058; Coal & Iron Co. v. Bailey, 25 Ky. L. R. 973, 76 S. W. 842; Miller v. Railroad, 76 Iowa 655, 39 N. W. 188, 14 A. St. Rep. 258; West v. Steamship Co. (Ga.), 52 S. E. 888, 19 Am. Neg. Rep. 132, note 1; Salliotte y. Bridge Co., 58 C. C. A. 466, 122 Fed. 378, 65 L. R. A. 620; Murray v. Currie, L. R. 6 C. P. 24, 40 L. J. C. P. N. S. 26, 23 L. T. N. S. 557, 19 Week. Rep. 104; Mayhew v. Mining

Co., 76 Me. 100; Harris v. McNamara, 97 Ala. 181, 12 So. 103; Deford v. State, 30 Md. 179; Benedict v. Martin (N. Y.), 36 Barb. 288; Smith v. Simmons, 103 Pa. 32, 49 Am. Rep. 113; Emmerson v. Fay, 94 Va. 60, 26 S. E. 386; Riley v. Steamship Co., 29 L. A. 791, 29 Am. Rep. 349; King v. Railroad, 66 N. Y. 181, 23 Am. Rep. 37; Nugent v. Steamship Co., 51 Hun 306, 3 N. Y. Suppl. 861, 61 Hun 626, 16 N. Y. Supp. 66, judgment affirmed 147 N. Y. 709, 42 N. E. 724; Rice v. Steel Spring Works (Mich.), 67 N. W. 120; Hughbanks v. Boston Invest. Co., 92 Iowa 267, 60 N. W. 640. (3) Defendants owed no duty to plaintiff, because of absence of contractual relations; and the only duty they owed to any person in connection with this agreement was a duty to Johnson, to furnish him a reasonably safe cable; this act fulfilled, their duty ended; and there could be no liability even to Johnson, unless defendants furnishing the cable knew that it was inherently dangerous and failed to disclose such knowledge, provided injury occurred to Johnson in its use during the contract. Heizer v. Mfg. Co., 110 Mo. 605; Oil Co. v. Church (Tex. Civ. App.), 74 S. W. 799, and authorities cited; Casey v. Bridge Co., 114 Mo. App. 63; Riley v. Steamship Co., 29 L. A. 791, 29 Am. Rep. 349; Rice v. Steel & Spring Works (Mich.), 67 N. W. 120. (4) No contractual relation existing between plaintiff and defendants no duty was owing by them to him, for by agreeing to help Johnson carry out his contract for one-third of receipts after payment of expenses; he consents to use the appliances furnished to Johnson under the contract and if injured while so engaged is remediless. Lee v. Railroad, 112 Mo. App. 394; Birmingham, etc., Co. v. Allen, 13 So. 13; Maley v. Gas Light Co., 158 Mass. 135, 32 N. E. 119, 47 L. R. A. 161.

*C. H. Montgomery* for respondent.

(1) Respondent was an employee, not a subcontractor. Perry v. Ford, 17 Mo. App. 220; Wood on Master and Servant, p. 584; Fink v. Mo. F. Co., 10 Mo. App. 61; Tiffin v. McCormack, 34 Ohio St. 638; Morgan v. Bowman, 22 Mo. 538, 550. (2) If plaintiff was a contractor or the employee of a contractor he could recover. Fassbinder v. Railroad, 104 S. W. 1155; 2 Bailey's Personal Injuries, sec. 2568, p. 853, secs. 2581, 2583, 2589, 2596, 2599; Sackewitz v. Am. B. M. Co., 78 Mo. App. 153; Shearman and Redfield on Negligence, sec. 174, p. 258; Gayle v. Car & F. Co., 177 Mo. 433. (3) Relation of contract not necessary between party injured and party guilty of negligence. (4) Negligence by furnishing dangerous appliance. Sykes v. St. Louis & Co., 88 Mo. App. 204.

JOHNSON, J.—Action for damages resulting from personal injuries alleged to have been caused by the negligence of defendants who are sued as partners. Plaintiff had judgment against all of the defendants for six hundred and fifty dollars, and defendants appealed.

At the time of the injury, September 22, 1906, plaintiff was working as a miner in sinking a shaft on mining property owned by defendants in Jasper county. He was at the time in a shaft which was over one hundred feet deep, when a wire cable, used in hoisting, broke under the strain of the load being hoisted, thereby permitting the loaded tub to fall to the bottom, severely injuring him. The negligence charged in the petition is the breach of a duty defendants owed to plaintiff to exercise reasonable care to provide a reasonably safe cable, and the evidence of plaintiff tends to show that at the time of the injury, the cable had become weakened where it was attached to the hook by which the tub was suspended, that it was in an unsafe condition, that the defect was due to the ravages of rust which were

greater at this than at other parts of the cable, because of the fact that the cable was bare except at the place mentioned, where it was covered with cloth, or leather, for the space of a few inches, and that the defect was concealed from plaintiff by the covering, but would have been discovered by defendants had they removed the cloth, or leather, and examined the cable end with reasonable care.

The subject of the nature of the relationship of plaintiff to defendants established by his employment is one of vital importance. The facts material to this issue are not in dispute. It appears that some ten days before the injury, defendants, having concluded to sink to a greater depth a prospect shaft on their property—then about 112 feet deep—entered into an agreement with a miner named Johnson to do the work. By the terms of the contract, which was not in writing, Johnson first was to clear out the old shaft and "to crib six feet of it." For this service, he and his assistants were to be paid day wages. After that was done, Johnson was to proceed to sink the shaft, for which he was to receive $10 per foot, was to employ and pay the miners he found it necessary to employ to do the work, and was to furnish the powder and other material consumed in the operations. Defendants, in addition to the consideration mentioned, agreed to furnish Johnson, for use in the work, a derrick, a hoister, a cable and a tub owned by them. The number of feet to be sunk was not specified and we find, in effect, defendants reserved the right to discontinue the work at any time. Johnson hired plaintiff and another miner to help him and agreed to pay plaintiff for his work one-third of the compensation received from defendants less the cost of the powder and other material consumed. Johnson alone had the right to employ and discharge the miners and to control the manner in which their work should be done. Defendants had no control over such matters.

We are not overlooking the fact that in answer to a question asked by the court, Johnson testified: "He (meaning one of defendants) said he would give us $10 a foot to sink the shaft." But the testimony of this witness, taken as a whole, indisputably shows that the contract of defendants was with him alone and that it was immaterial to them what assistants he might employ or what consideration he might pay them. He was given a free hand to employ and discharge, to pay wages, or, as was done, to divide his profits with those who worked for him. On this subject, plaintiff testified: "Well, sir, Mr. Johnson came over and told me he got the job from Mr. Suppe and wanted me to go out and help him work and he says we will go out and put up the hoister and get everything ready. . . . The Court: How were you working there with Johnson? A. He told me he would give me a third of what was left after the expenses was paid, powder bill and blacksmith bill and such."

It hardly would be contended by anyone that defedants, under such circumstances became personally bound for the payment to plaintiff of his compensation. His contract was with Johnson, and we do not hesitate in rejecting the suggestion that the relation between defendants and plaintiff was that of master and servant. Without any right to employ or discharge plaintiff, to give orders to him, or to control his work, and with no obligation to pay him, how can it be said defendants were in the position of plaintiff's master? We approve what was said on this subject by the Court of Appeals of Kentucky in a very similar case:

"The intestate was neither employed, controlled nor paid by the appellant. It had neither the authority to employ him to work in the shaft, direct him while there, nor to discharge him. If he had been the servant of the appellant, he would have been entirely under its control and direction. In Cooley on Torts, pp. 531,

Kiser v. Suppe.

532, it is said: 'A preliminary remark is essential regarding the employment, in the law, of the words "master and servant." The common understanding of the words and the legal understanding are not the same. The latter is broader, and comprehends some cases in which the parties are master and servant ' only in a peculiar sense, and for certain purposes—perhaps only for a single purpose. In strictness, a servant is one who, for a valuable consideration, engages in the service of another, and undertakes to observe his directions in some lawful business. . . . It could not at all depend on whether the master was to pay anything, nor whether the service was permanent or temporary. His control of the action of the other is the important circumstance, and the particulars of his arrangement are immaterial.' . . . 'The plaintiff not being employed, controlled, or paid by the defendant, would seem not to be their servant, so that they would be liable for his acts, or their liability to him be governed by the rules applicable as between master and servant. [Johnson v. Boston, 118 Mass. 114.]' In Robinson v. Webb, 11 Bush. (Mass.) 114, the court quotes with approval a definition of 'master' as follows: 'He is to be deemed the master who has the superior choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate result of the work, but in details.' " [Coal & Iron Co. v. Grider, 74 S. W. 1058.] Applying these principles to the facts and circumstances before us, we must hold as did the Kentucky court in the case under review, that plaintiff was not the servant of defendants.

The next subject to engage our attention is the character of the relation between defendants and Johnson. Was the latter an independent contractor, or the servant, of defendants? Plaintiff argues that Johnson was the servant of defendants since the contract gave them the right to discontinue the prosecution of the

work of sinking the shaft at any time. But we think this fact is not conclusive, though it should be considered as tending to support plaintiff's position. Other provisions of the contract so predominate as to constrain us to say, as a matter of law, that Johnson was an independent contractor. Not only was he to be paid "by the piece" instead of by wages—another important but not conclusive fact—but he was to have full control over the manner of conducting the work and was to employ, discharge and pay his assistants. He owed defendants no obedience and, consequently, they had no right to discharge him for disobedience. Their right to discontinue the sinking of the shaft and thereby terminate his employment was not the legal equivalent of the right to discharge him, and. as long as work was conducted by him under the contract, he was a contractor, independent of their control.

"In every case the conclusive test to be sought after, by which to determine whether or not the immediate actor was the servant of the defendant is whether the defendant reserved control over him as to the manner of doing the work. . . . The power to control implies the power to discharge for disobedience and accordingly the power to discharge has frequently been regarded as the test by which to determine whether the relation of master and servant existed. . . . A person who, skilled in a particular employment, engages with another to do a particular job of work for a round sum reserving to himself the right to determine by what methods he shall accomplish the work is regarded as an independent contractor and not as the servant or agent of the other contracting party in the sense which makes the latter responsible for any wrong he may commit in the doing of the work." [Fink v. Furnace Co., 10 Mo. App. 61.] In Central Coal & Iron Co. v. Grider, supra, the contract for the sinking of a mining shaft in all features was similar to that under consideration. The

court, manifestly moved by the reasons we have just stated, held that the relation to the mine owners of the persons who undertook to perform the work was that of an independent contractor and not of servant. We refer especially to that case for the reason that it is exactly parallel to this in the respects now under discussion. Numerous other authorities have been consulted, but we do not deem it necessary to refer to them. A careful analysis of the contract can lead to no other conclusion than that Johnson occupied the position of independent contractor. For the same reasons that impel this conclusion, we must reject the contention of defendants that plaintiff was a sub-contractor. He was the servant of Johnson, the contractor, since Johnson not only had the right to control the manner in which plaintiff's work should be done, but to discharge plaintiff for disobedience or for any other reason. The fact that plaintiff was to be paid by the foot and not by the day was not inconsistent with the relation of master and servant, nor did it operate as a restriction on the right of his employer to discharge him at any time.

With the question of the relationship of the parties settled, we now proceed to consider the subject of whose negligence was the proximate cause of the injury. The evidence of plaintiff tends to show that the cable was rusty, somewhat worn, and rather too small for the use to which Johnson subjected it. Its real insufficiency for the work, however, resulted from the defective condition of the few inches under cover at the end to which the hook was fastened. There, on account of moisture being held by the covering, the metal had been rusted to a greater extent than at any other part of the cable. All that it was necessary to do to remedy this defect was to cut off about six inches of the cable end and to reattach the hook. The managing defendant told Johnson where the cable mght be found and he went to get

it, accompanied by plaintiff. He testified that the man who was in possession of the place "told us that the cable had not been used for some time and that we had better look it over, that it was a little bit rusty. Said we had better look it over." It would have been an easy and simple task to remove the covering at the hook, but Johnson did not do this and, therefore, did not inspect that part of the cable, though it appears to be a matter of common knowledge among miners that the weakest part of a wire cable is at the hook end where it is covered. We quote from his testimony:

"The Court: Now you were going to use that cable and have a man work under it and you took no precaution, did not untwist it to see if it was all right? A. No, they ought to know what they are using. . . . Q. I thought you said the young man told you to look at it? A. Yes." Plaintiff testified that he did not hear the caretaker tell Johnson to inspect the cable, but explained that his hearing is impaired. His negative statement, therefore, is of no weight and will not be considered as contradicting the statement of Johnson, his witness. During the nine or ten days preceding the injury, Johnson made no inspection of the cable end. The cable was in constant use, doing heavy work and, of course, it is impossible for anyone to say what effect such use produced on the defect but, obviously, to some extent, it must have had a deteriorating effect.

Though plaintiff was not the servant of defendants and they owed him no contractual duty, their agreement with the independent contractor to provide him a cable with knowledge on their part that he would employ miners to assist him, imposed a duty on them to the servants he might employ to exercise reasonable care to furnish a cable reasonably safe for the intended use. The rule thus is stated in Roddy v. Railway, 104 Mo. 234: "It is now well established that the employer

of a contractor is not responsible for the negligence of the contractor, or his servants, in case the contractor is given entire freedom in the use of means to accomplish the result. Where the employer, however, reserves the right to direct the manner of the performance in any particular, or where he undertakes to provide any of the instrumentalities, he owes to the contractor and his employees the duty of care in respect to such matters over which he retains control, or undertakes to perform. . . . We think each of these contracting parties owed to the other, and his employees, the duty of properly discharging his part of the joint undertaking, in respect to any matter exclusively devolving upon him." To the same effect is the opinion of this court in Fassbinder v. Railway, 126 Mo. App. 563.

But there is nothing to be found in either of these cases to sustain the position that the duty of the owner of the instrumentality to the servant of the contractor continues during the use of the instrumentality by the contractor where such use is of a nature to affect its safety. Certainly the owner discharges his full duty when he furnishes a reasonably safe appliance and, thereafter, it is the sole duty of the contractor to employ reasonable care to keep it safe. After the owner provides the appliance under a contract that he will provide it, his control over it ceases. Without any right to inspect and repair it, it would be most unjust to call him to account for the neglect of the contractor to perform that duty. It is true the evidence tends to show that the cable was in a defective condition when Johnson received it and, consequently, that under the rules we have stated, defendants were guilty of a breach of their duty, but it is very clear that such negligence was the remote, not the direct cause of plaintiff's injury. Johnson, his master, owed him the duty, first, to exercise reasonable care to furnish him with a reasonably safe cable and, second, to continue in the ex-

ercise of such care during the progress of the work. Knowing that the cable was being used in a way that might make it unsafe, it was his duty to inspect it at reasonable intervals to ascertain its condition.    This duty he wholly failed to perform.    He took a rusty and worn cable with warning that it might need repairs, made no inspection in the first instance and then used it without any thought or care.    For aught he knew or seemed to care, it might be and, doubtless, was becoming more and more dangerous from day to day, yet he did not even remove the covering to look at it. Such conduct was culpable in the highest degree and it was the proximate cause of the injury.    Defendants' negligence, as we have just said, was but a remote cause, since it would have been rendered innocuous had plaintiff's master performed his subsequent duty.

The judgment is reversed.    All concur.