Henry Lajoie, Respondent, v. Michael Rossi, Appellant.—37 S. W. (2d) 684.

Kansas City Court of Appeals. Opinion filed April 6, 1931.

*A. J. Bielby, Melvin Duvall* and *W. J. Boyd* for respondent.

*Landis & Landis* for appellant.

ARNOLD, J.—This is an action in damages wherein plaintiff seeks to recover for loss of services and companionship of his wife, by reason of personal injuries alleged to have been sustained by her in a collision between an automobile in which she was seated and one driven by defendant, Tony Rossi.

The facts of record are that defendants are father and son and that Tony Rossi, an adult, resided at his father's home in the City of St. Joseph. The son owned and operated an automobile.

Plaintiff and his wife resided at No. 415 West Chestnut Street in St. Joseph, Missouri, and their daughter and son-in-law, Mr. and Mrs. Raymond Gilbert, lived with them. About 7:15 P. M. on October 4, 1929, the wife of plaintiff was seated in the rear seat of an automobile, owned and operated by her son-in-law, Raymond Gilbert, said car having been backed out of an alley on the north side of Chestnut Street, a street running east and west in said city, and to the south side of said Chestnut Street where it was stopped, headed north, with its headlights burning. While the Gilbert car was thus located, defendant Tony Rossi, driving a Ford roadster west along Chestnut Street at a rate of speed variously estimated at 40 to 50 miles per hour, ran into and against the Gilbert car in which plaintiff's wife was seated. As a result of the collision, plaintiff's wife received a comminuted fracture of the right shoulder blade, an injury to the right shoulder and right elbow. She was taken into her home, a surgeon was called and she was then taken to a hospital. Her shoulder was bandaged and her arm strapped to her side, after which it is alleged she was completely disabled for several weeks and will be partially disabled permanently.

The testimony shows that immediately before the collision, the elder Rossi asked his son to go to a grocery store which was within a few blocks of their home, and make a purchase of some pancake flour and coffee for breakfast. It is also in evidence that Tony Rossi intended to "see some boys" after he got the supplies for his father. On this point Tony testified:

"A. Dad told me to go down to the store and get some pancake flour and coffee. . . .

"Q. Were you going after this coffee and pancake flour your father told you to get when this collision happened? A. Yes. . . .

"Q. Were you going down to see some boys? A. After I got the pancake flour and coffee."

The testimony develops no dispute that Tony Rossi bought and paid for the Ford roadster himself, and that it was his car. The petition is directed against Tony Rossi and Michael Rossi and alleges the facts as above stated, and charges Tony Rossi was the agent, servant and employee of Michael Rossi and was then and there in charge of and operating said automobile. The negligence charge is, as follows:

"That, at said time and place, defendant Tony Rossi and defendant Michael Rossi, by defendant Tony Rossi as his servant, agent and employee, carelessly, negligently and recklessly ran and drove said automobile and motor vehicle in a westerly direction upon and along said Chestnut Street and into, upon and against the automobile in which plaintiff's wife was seated, at a rapid, high and dangerous rate of speed, under the circumstances, and negligently ran, drove and propelled said automobile and motor vehicle in a westerly

direction upon and along said Chestnut Street and into, upon and against the automobile in which plaintiff's said wife was seated, without sounding or giving any warning, by auto horn or other signal device thereon, of the approach thereof to the automobile in which plaintiff's said wife was seated, as aforesaid, and negligently ran, drove and propelled said automobile and motor vehicle upon and against the automobile in which plaintiff's said wife was seated, as aforesaid, and negligently turned and drove said automobile and motor vehicle into, upon and against the motor vehicle and automobile in which plaintiff's said wife was seated, when by the exercise of due and proper care, defendants' said automobile and motor vehicle could have been stopped, or the course thereof changed, in time to have averted a collision with the automobile in which plaintiff's said wife was seated, as aforesaid; that in time and when defendants' automobile and motor vehicle was far enough away from the automobile in which plaintiff's said wife was seated so that, by the exercise of due and proper care defendant Tony Rossi and defendant Michael Rossi, by his agent, servant and employee Tony Rossi, could have stopped their automobile, or turned the same around the automobile in which plaintiff's said wife was seated and thereby have averted a collision with the automobile in which plaintiff's said wife was seated, defendants saw, or in the exercise of due and proper care would have seen, the automobile in which plaintiff's said wife was seated, in said Chestnut Street, and in a position of danger of being struck and collided with unless defendants' said automobile was stopped or the course thereof changed, and that thereafter defendants negligently failed to stop said automobile or motor vehicle, or to change the course thereof, and negligently ran, drove and propelled said automobile and motor vehicle into, upon and against the automobile in which plaintiff's said wife was seated, as aforesaid.''

Judgment is asked against both defendants in the sum of $10,000. The answer of defendant Michael Rossi is a general denial. The cause was tried to the court and jury, resulting in a verdict for plaintiff in the sum of $3,000, against both defendants. At the close of plaintiff's evidence and again at the close of all the evidence, defendant Michael Rossi filed demurrers which were overruled. A motion for new trial was unavailing and defendant Michael Rossi appeals.

The facts as to the cause of the injury to plaintiff's wife are not in dispute. The controversy is (1) as to the liability of Michael Rossi, and (2) as to the amount of the judgment. The motion for new trial urges thirteen points, as shown by the record, but on appeal there are only three assignments of error, as follows: (1) That the verdict is excessive and was the result of passion and prejudice; (2) that the court erred in giving plaintiff's instructions 1 and 2, and (3) in refusing defendant, Michael Rossi's instruction

"A" in the nature of a demurrer, offered at the close of plaintiff's case and again at the close of all the evidence. For convenience we shall first consider assignment No. 3, for, if defendant's theory therein is found to be tenable, assignments 1 and 2 need not be considered, the contention being that, as a matter of law, defendant Michael Rossi is not liable for the act of his adult son in operating his own car when not in the employment of his father.

In view of the evidence of record, plaintiff's case is bottomed upon the theory of *respondeat superior*, and that doctrine may not be held to apply unless there is present in the situation either an employee, servant or agent. It is the law that there is a responsibility placed on one who is having a service rendered in his behalf on either of two grounds, namely, (1) that the service is in itself unlawful; or (2) the manner of the execution of the service was not lawful and was within the control of the master. Except on one of these grounds, the rule of *respondeat superior* does not apply, and as to the first, it is not contended the service herein was unlawful and that point therefore is not in the case. As to the second ground, the question as to whether or not the appealing defendant may be lawfully held responsible for his son's alleged tortious act depends upon the fact of agency which, of course, includes within its scope the service of a servant or employee.

The relation of principal and agent is contractual. [State ex rel. v. Cox, 286 S. W. 368, 315 S. W. 619.] An agent is defined as one who acts for another by authority from him; one who undertakes to transact some business or manage some affair for another by authority of, and on account of the latter. The term agent applies to anyone who, by authority, performs an act for another. [Peters v. Railroad Co., 150 Mo. App. 721, 131 S. W. 917; 160 Mo. App. 629, 140 S. W. 1197.]

It may be well at this point to discuss the question of servant and employee. A servant is defined as "one who serves or does service, voluntary or involuntary; one who is employed by another for menial offices or for other labor, and is subject to his command; a person who labors or exerts himself for the benefit of another, his master or employer; a subordinate helper." [3 Bouvier's Law Dict. pp. 3047, 3048; Flesh v. Lindsay, 115 Mo. 1, 21 S. W. 907.] And it is held the right of the master to the services of his servant in every respect is grounded on the contract between them. There is no proof, nor is there any contention herein, that Tony Rossi was under contract with his father as a servant. It is plaintiff's position, and the petition so alleges, that Tony Rossi was the servant of his father Michael Rossi in respect to the errand upon which Tony was bent when the accident occurred. It is pointed out in this connection and is true that to constitute the relation of master and servant, it is not essential the services should be paid for, but the relation may exist

although the servant neither expects nor is entitled to compensation. [Kiser v. Suppe, 133 Mo. App. 19, 112 S. W. 1005; Schmidt v. Adams, 18 Mo. App. 432; Lamb v. Davidson, 69 Mo. App. 107; 39 C. J. 36.] Nor does the fact that the servant makes use of his own or another's property in performing the service prevent the relationship being that of master and servant. [39 C. J. 37; Tutie v. Kennedy, 272 S. W. 117.] The master is liable for the negligent acts or omissions of his servant while acting as such and within the scope of his employment. [39 C. L. 1289, 1290; Hinkle v. Railroad, 199 S. W. 227; Brill v. Eddy, 115 Mo. 596, 22 S. W. 488.] The principles just announced undoubtedly declare the law; and so we find ourserves face to face with the question as to whether or not Tony Rossi was the agent of his father when the injury occurred.

Plaintiff insists there was abundant evidence in the record that such agency did exist, while on the other hand, defendant contends the case should not have been submitted · to the jury as against Michael Rossi because the evidence, under the most favorable construction, would not establish the relationship of master and servant, principal and agent, employer and employee, and invoke the doctrine of *respondeat superior*. This situation requires some reference to the testimony presented. Plaintiff placed both defendants on the stand as his own witnesses. Michael Rossi testified as follows:

"Q. Tell the jury what conversation, if any, you had with your son, Tony, before you left your home that day. A. The boy says he go down to the store down there and my wife and me say 'When you come back from the store, bring something for breakfast.'

"Q. Did you tell him what to bring? A. Yes, we did.

"Q. What did you tell him to bring? A. Some coffee and pancake flour. Don't remember exactly. I think that is all it was. Don't remember exactly.

"Q. What did he say? A. It is all right. All I know."

On this point, in his direct examination, Tony Rossi testified as follows:

"Q. Had you had a conversation with your father, Michael Rossi, before this accident happened? A. Yes, sir.

"Q. Just tell the jury in your own words what the conversation was. A. Dad told me to go down to the store and get some pancake flour and coffee.

"Q. What store? A. Bokay & Son.

"Q. Where is that store located with reference to where you live? A. Down the hill about two blocks or more.

"Q. Were you going after this coffee and pancake flour your father told you to get when this collision happened? A. Yes, I was driving west down Chestnut Street. I started to apply the brake, my foot slipped and hit the foot feed some way or other and when I hit the brake it threw me around over to the left-hand side of

the street. I was going about forty miles an hour at the time I first saw the car that Mrs. Lajoie was in."

And on cross-examination, he testified:

"Q. You heard your father testify that you told him you were going down town to see some boys, and he asked you on your way to get some groceries? That is a fact? A. I was going after pancake flour and coffee.

"Q. Had nothing else in mind? A. Afterwards—yes.

"Q. You were going down to see some boys? A. After I got the pancake flour and coffee.

"Q. Your main thought was to play with the boys and then come back? A. I was going after the pancake flour and coffee and then going to see the boys."

Thus it is seen there is some contradiction between the two defendants as to whether or not Tony Rossi was sent primarily on an errand for his father, or whether on his own motion he was going to "see some boys" and incidentally to purchase the pancake flour and coffee. But in any event, Tony Rossi was on an errand, primarily or secondarily, for his father when the accident in question occurred. But whether Michael Rossi is liable for the tort of his son is another question in this case.

Our attention has been called to the case of Phillips v. Telegraph Co., 270 Mo. 676, 195 S. W. 711, which we think decisive of the issues here presented. The decision was by the court en banc, and there was a dissenting opinion by WOODSON, J. The court held there was no liability for the act of an employee of the Western Union Telegraph Co., where in the course of delivering a message the messenger ran into and injured a person standing on the street. There was no question but the messenger boy was the agent and servant of the telegraph company and was on an errand for his employer. The court held the boy who caused the injury "was not travelling on the street by permission of his co-defendant, but in the exercise of a public right valuable to himself as a facility for gaining a livelihood as well as to his employer. Had he not possessed this right his employer could not have conferred it nor taken it away. It went with his service as far as it was necessary to the performance of the duty involved and no further. In all respects and for all other purposes it remained his own."

In the case at bar we may not arbitrarily assume that by the terms of Tony Rossi's employment the control and management of the car which he himself owned was that of his father; nor can we assume that Michael Rossi was under any obligatiin to restrain his liberty of action in the ordinary use of a public easement, although should the master authorize him to commit a wrong such as inciting him to a dangerous rate of speed in a crowd, the master would be liable. At p. 680 et seq., in the Phillips case, the court said:

"On the other hand, neither beasts nor inanimate things participate in these public uses of their own right, but only have status in the public highway by right of their owners. For this reason one who employs a beast upon the street must do so under such management and control as will provide reasonably for the safety of persons and their property. Had this boy been furnished by the defendant with a horse to ride or an automobile to transport him in the performance of his duties, his management of these facilities would have been the management of his master, which would have been liable for his acts and omissions in such management."

In the case at bar the automobile was the property of Tony Rossi and was not furnished him by his father. Neither is there any testimony of record that the father directed Tony to use his car in doing his errand, nor that he directed the rate of speed. The Phillips case, supra, specifically overruled the opinion of the St. Louis Court of Appeals, 194 Mo. App. 458, 184 S. W. 958, which held a contrary view. In the Phillips case, l. c. 684, the court said:

"Many of us have seen painful accidents resulting from such conditions, but have seen no legal authority for holding the master liable in damages growing out of the rollicking movements of his servants, on the street, even though his own business may have taken them to the very place, at that very time, unless he instigates the wrong which caused the injury."

Following the ruling and reasoning of the Supreme Court in the Phillips case, and the earlier cases of Morgan v. Bowman, 22 Mo. 538, and Hilsdorf v. City, 45 Mo. 94, we hold the trial court erred in overruling defendant Michael Rossi's demurrers at the close of plaintiff's case and at the close of all the evidence. Accordingly the judgment against defendant Michael Rossi is reversed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.