## LEON BOGATSKY et al *v.* MAURICE SWERDLIN et al.

*Workmen's Compensation — Relation of Employment — Independent Contractor—Questions for Jury.*

Where the facts are conceded or undisputed, and there is no dispute as to the inferences to be drawn therefrom, their legal significance is a matter of law to be determined by the court, and if the correct legal interpretation of such undisputed or conceded facts is in conflict with the finding of the commission, its finding must give way, although Code, art. 101, sec. 56, provides that the award of the commission shall be *prima facie* correct, and the burden of proof shall be on the party attacking it.                                                pp. 21, 22

It being a question whether the claimant, a painter, was the employee of S, or of B, who furnished men to paint S's buildings,

and by whom the claimant was engaged, *held* that it was error, on appeal from an award by the commission against S and his insurer, to instruct the jury that the claimant was an employee of B and not of S, and that B was not an agent or employee of S, or a subcontractor for him, but was an independent contractor, these being issues to be decided in the first instance by the commission, and after that, on appeal, by a jury or the court sitting as a jury, and not by the court in the exercise of its usual and ordinary functions.                              pp. 24, 25

Evidence in reference to the circumstances under which B furnished painters to do work on S's buildings, receiving as compensation a percentage of the cost of such labor, *held* to be legally sufficient to show that one of the painters so furnished was, when injured, in the employ of S, as having been employed by B as S's agent.                              p. 26

Prayers by appellee, peremptorily instructing the jury that claimant was not his employee, but was the employee of another, admitted for the purposes of those prayers all facts in evidence tending to show that claimant was appellee's employee.    p. 27

Where the contract is indefinite, or the evidence relating to it is conflicting, or will admit of different inferences, the question whether one is an independent contractor or an employee is ordinarily for the jury.                              p. 27

Direction and control, and the right to hire and discharge workmen, are always important elements to be considered on this question, and it is generally regarded as essential that an independent contractor shall have contracted to do a specific work and shall have the right to control the mode and manner of doing it.                              p. 27

Whether the workmen are furnished by the master or the contractor, the mode and time of paying the contractor, as well as whether the workmen are paid by the master or the contractor, are matters to be considered on the question, which are not necessarily conclusive, but derive their force and weight from the circumstances incident to them.                              p. 28

*Decided December 10th, 1926.*

Appeal from the Baltimore City Court (ULMAN, J.).

Proceeding by way of appeal from. an award in favor of Fred. W. Heller, rendered by the State Industrial Accident Commission against Maurice Swerdlin, employer, and the New York Indemnity Company, insurer, to which proceeding Leon Bogatsky, employer, and the Employer's Indemnity Corporation, his insurer, appeared as defendants. From a judgment reversing the order of the commission, said defendants appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, and PARKE, JJ.

*William D. Macmillan,* with whom was *Oliver Y. Harris* on the brief, for the appellants.

*Roszel C. Thomsen,* with whom was *Walter L. Clark* on the brief, for Maurice Swerdlin and the New York Indemnity Company, appellees.

OFFUTT, J., delivered the opinion of the Court.

Fred W. Heller, a house painter, while at work on a house owned by Maurice Swerdlin, was on March 27th, 1925, injured, and on April 21st, 1925, he filed with the State Industrial Accident Commission a claim for compensation, in which he stated that when he was injured he was employed by Maurice Swerdlin, and that his injury arose out of and in the course of such employment. On March 31st, 1925, there was also filed with the commission what purported to be an employer's report, which also gave the name of Swerdlin as the employer, although that report was not signed by Swerdlin or any other person for him, and it does not appear by whom or by whose authority or in what manner it came to be found in the files of the commission. The record indicates that a notice, dated on April 22nd, 1925, was directed to Swerdlin and to the New York Indemnity Company, his insurer, that the claim had been filed against him as employer, and that unless a hearing was

requested, the commission would decide the claim on April 28th, 1925, on the evidence then in their possession, although 'its receipt was not admitted. No such request was made, and on April 29th, 1925, the commission awarded compensation to the claimant against Swerdlin and the New York Indemnity Company. Compensation appears to have been paid under that award until the following fall, when Swerdlin and the New York Indemnity Company asked that the case be reopened, (1) to determine the identity of Heller's employer, and (2) to determine the nature and extent of disability. A hearing was held, and on January 28th, 1926, the commission affirmed its previous order. From that order the appellees in this case appealed to the Baltimore City Court, where the case was tried before the court and a jury. At the conclusion of the trial the court directed the jury to find for the appellees on six issues of fact, framed to ascertain whether at the time of the injury Heller was an employee of Swerdlin within the meaning of the Compensation Act. These rulings resulted in a verdict for the appellees, reversing the order of the commission, and from that judgment this appeal has been taken.

The sole question presented by the appeal is whether, upon all the evidence before it, the trial court was justified in peremptorily instructing the jury that at the time of the accident Heller was an employee of one Leon Bogatsky, and was not an employee of Swerdlin. Those prayers invoke the consideration by the Court of the legal sufficiency of the evidence offered in connection with those issues as well as its legal effect, and it becomes necessary therefore to consider that evidence in connection with that question, keeping in mind the rule stated in *Harrison v. Central Construction Co.,* 135 Md. 170, that in cases where the facts are conceded or undisputed, and there is no dispute as to the inferences to be drawn therefrom, their legal significance is a matter of law to be determined by the court, and if the correct legal interpretation of such undisputed or conceded

facts is in conflict with the finding of the commission, its findings must give way, notwithstanding the provision of the statute that the award of the commission shall be *"prima facie* correct and the burden of proof shall be upon the party attacking the same." Article 101, section 56, C. P. G. L. of Md. Because if the facts are conceded or undisputed, there is no issue of fact to be submitted to the jury, and the question as to whether the finding of the commission was correct necessarily becomes one of law for the court to decide. *Todd v. Furniture Co.,* 147 Md. 355. And the expression in *Jewell Tea Co. v. Weber,* 132 Md. 182, that the Court "was not authorized to say that the appellant had met the burden imposed upon it" was not intended to apply to such a case. *Harrison v. Central Construction Co., supra.*

Leon Bogatsky is a house painter. Maurice Swerdlin is engaged in the business of building and selling houses. For a number of years Bogatsky worked on Swerdlin's buildings. Several years ago Bogatsky became disabled, and since then he has himself done no active work, but when Swerdlin so requested he furnished him workmen and supplies, and charged him for that service eight per cent. of the amount paid for such labor and materials. So much is undisputed, but the real dispute is as to whether the men so furnished Swerdlin were his employees or the employees of Bogatsky, and as to that the evidence is in substance this: Heller, in his claim for compensation, to which he made affidavit, certified that he was employed by Swerdlin, but in his testimony in court, at the trial of the appeal, he recanted, and said that he was employed by Bogatsky. In explaining his first statement he said Bogatsky told him to say that, and that he did tell the inspector who brought him the paper that Swerdlin was his employer, because he did not know who carried the insurance, Swerdlin or Bogatsky, but that in fact Bogatsky employed him, and that he took orders only from him. He further testified that so far as he knew, none of Bogatsky's painters worked on any but Swerdlin's work,

that Bogatsky employed three or four painters and had a small shop near East Baltimore street, that in the four years he had worked for Bogatsky he worked only on Swerdlin's work, but he was directed by Bogatsky.

Maurice Swerdlin testified that when he had painting to do he gave it out to Bogatsky, and that he, Bogatsky, hired and discharged the men, and directed them in their work, and at intervals rendered a statement to Swerdlin for the sums paid for the wages of these men, and the materials used in their work, which he paid by check to Bogatsky. That in the construction of his buildings he employed other workmen directly or through a foreman, but that he had no control over Bogatsky or his men, further than to tell Bogatsky when to work and when to stop. He further said that he had no definite contract with Bogatsky, or any arrangement about compensation, that when he wanted work done he would notify Bogatsky, who would furnish the labor and supplies for doing it, and send Swerdlin the bill for the cost thereof plus eight per cent. commissions. He also said that he had not reported the accident to the State Industrial Accident Commission, but had reported it to his insurer, but at the same time reported that the injured man was not his employee.

Leon Bogatsky testified that he was a painter, that at the time of the accident he was working for nobody, but that his men were working for Swerdlin, that he had no arrangement or contract with him, but that whenever Swerdlin wanted a man to paint he would send a "man over there to work for him," that he told the man what to do, and Swerdlin told him, Bogatsky, what to do, and that he charged Swerdlin for the cost of labor and material plus eight per cent. of such cost; and that when he saw Heller in the hospital he told him to say that he worked for Swerdlin, although Heller was on his, Bogatsky's pay-roll, on which he paid insurance premiums.

Mrs. Ida Rosen, Mrs. Bogatsky's daughter, who kept his books, testified that "Pop has been disabled and he closed

up and Mr. Bogatsky tells us how many men he wants on a job and it was necessary for Mr. Swerdlin to carry compensation insurance and he was supposed to cover them. * * * These men are practically employed by Mr. Swerdlin, if they are no good he does not keep them. I give them a list of how many men work there and the time they put in and keep that list and he did get it every week. He gives us what they paint plus eight per cent., not seven per cent., and that does for the rent and other expenses." She further said that Swerdlin did not employ anybody, but that he paid off their men through their foreman, that he gave them the cost of the labor plus eight per cent., "the exact amount of wages, and the exact amount of material plus eight per cent.," and that they paid the men out of the amount so received from Swerdlin; that Swerdlin did not always pay the money promptly, that "he has been going back in what he pays us, we give him the list and they have not been doing any business. If Pop hasn't got the money he borrows it and pays the men, and Mr. Swerdlin pays him back, but he pays for each job, how many men work and the material used plus eight per cent. for the expenses, that would pay the rent of the shop." And when asked, "So you did not render him a bill each week," she said: "He knew how many men worked on the job and knew how much to expect. Mr. Swerdlin cannot write and he used to say to Pop, if I cannot pay it all let Jack pay it and I will give it to you. Q. Each week he paid you $100? A. No. he did not." She also said that Bogatsky carried insurance on Heller, and that the premiums were taken out of the eight per cent. commissions and not charged to Swerdlin.

Upon that evidence the trial court granted six prayers for the appellees, which peremptorily instructed the jury to find that Fred Heller was not an employee of Swerdlin at the time of his injury, but that he was an employee of Bogatsky, that Bogatsky was not an agent or employee of Swerdlin, that Bogatsky was not a subcontractor for Swerdlin, but that he was an independent contractor for him, and that

Heller was not employed by Swerdlin and Bogatsky jointly. That is to say, the court not only determined what the evidence did not show, but it also affirmatively decided what it did show and instructed the jury accordingly. Whether Bogatsky was in fact Heller's employer, and whether he was an independent contractor for Swerdlin, were issues to be decided in the first instance by the commission, and after that, on appeal, by a jury or by the court sitting as a jury, and not by the court in the exercise of its usual and ordinary functions. And in instructing the jury to find those facts, the court went farther than it has any right to go under the law and the practice recognized in this state.

In *Calvert Bank v. Katz,* 102 Md. 61, the trial court instructed the jury that the undisputed evidence showed that the plaintiff was entitled to recover a stated sum from the defendant, just as in this case it instructed the jury that the undisputed evidence showed that Heller was an employee of Bogatsky, and that Bogatsky was an independent contractor. But in that case the Court said: "There was manifest error in this instruction. It usurped entirely the function of the jury. It found for them the ultimate facts, which it was their province to find, to wit, the indebtedness of the defendant and the amount, and told them that these facts which had been put in issue by the pleadings and were contested throughout had been established as a verity by undisputed evidence. It is error for the court to assume the existence of facts and take away from the jury the finding of the same. *Boyd v. McCann,* 10 Md. 118-123, citing *Charleston Ins. Co. v. Corner,* 2 Gill, 426, 427, where it is said: 'Doubtless the jury would have found these facts according to the testimony, but the sufficiency of evidence to satisfy a jury, or the circumstance that it is all on one side, does not authorize the court to direct the jury that it proves the fact. They have the power to refuse their credit, and no action of the court should control the exercise of their admitted right to weigh the credibility of evidence.' "

The court may, and, in practice often does, instruct juries trying issues involving the validity of wills, to find that the testator was capable of executing a valid will, but that is because the law presumes that every properly executed will is valid until the contrary appears, and if the caveator fails to overcome the presumption by legally sufficient evidence the presumption prevails. But here there are no legal presumptions to aid the appellees (appellants below) but such presumptions as there are are against them. Article 101, paragraph 56, C. P. G. L. of Md. The appellees' "C" and "F" prayers therefore should have been refused.

Nor can we agree that there was no evidence in the case legally sufficient to show that Heller was injured while in the employ of Swerdlin, or that he was not employed by Bogatsky as Swerdlin's agent. So far as the record discloses, there was no written contract of any kind between Swerdlin and Bogatsky, nor indeed any contract, except such as was implied from their course of business and mutual dealing. Whenever Swerdlin "wanted a man to paint" he called up Bogatsky and he sent a man "to work for him," and he told the man he sent to do what Swerdlin told him, Bogatsky, to do.

The men were "practically employed" by Swerdlin; if they were no good he did not keep them; he paid them through Bogatsky's foreman, and he received every week "a list of how many men worked there and the time they put in." Heller, in his claim for compensation, certified that Swerdlin employed him, and made affidavit to that fact. Swerdlin, although he denied having filed the "employers report" filed with the commission, in which it was stated that he was the employer, admitted having notified the insurer, who paid the compensation, of the accident, and though he must have known in April, 1925, when the original award was made by the commission, that the claim was filed against him as employer, neither he nor his insurer denied that he was Heller's employer until the following October, but his insurer continued, during the period from

April to October, to pay compensation under the award of April 29th, 1925. Many of these facts, it is true, were denied by the appellees, and others were qualified and explained, but nevertheless they are in the record, and since appellees, by the prayers under consideration, conceded them, for the purposes of those prayers they must be treated as admitted. Without commenting on the weight of these facts, or the credibility of the evidence relating to them, for those are jury questions, we cannot say as a matter of law that they are not sufficient to permit the inference that Heller was employed by Swerdlin through the agency of Bogatsky. The only alternative to that conclusion would be to hold that all the evidence in the case establishes the fact, as a matter of law, that Bogatsky, as an independent contractor for Swerdlin, employed the claimant. But we cannot accept that conclusion, because the prayers under consideration concede the truth of evidence tending to show that Heller was working for Swerdlin, and employed either by him through Bogatsky as an agent, or by Bogatsky as an independent contractor. But while it may be inferred from the evidence that he was employed by Bogatsky acting as an independent contractor, it cannot be said that that is the only rational inference to be drawn from it. It has been said, and with some force, that whether one "is an employee or an independent contractor is often a close question." *Schneider, Workmen's Compensation,* par. 37. And certainly, where the contract is indefinite, or the evidence relating to it is conflicting, or will admit of different inferences, the question is ordinarily for the jury. 19 *Ann. Cas.* 7. Many tests for the solution of the question have been suggested (*Schneider, Workmen's Compensation,* par. 37; 14 *R. C. L.* page 66 *et seq.*), but few of them can be regarded as conclusive. *Ibid.* Direction and control, the right to hire and discharge workmen, are always important elements to be considered, and it is generally regarded as essential that the independent contractor "must have contracted to do a specific work, and have the right to control

the mode and manner of doing it." *Schneider, Workmen's Compensation,* par. 37. And the "power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee." 14 *R. C. L.,* page 72. Whether the workmen are furnished by the master or the contractor, the mode and time of paying the contractor as well as whether the workmen are paid by the master or the contractor, are also matters to be considered, which are not necessarily conclusive, but derive their force and weight from the circumstances incident to them. In *Decola v. Cowan,* 102 Md. 556, this Court, in dealing with the question, in commenting upon the effect of the following testimony: "I had bricklayers to build the walls, Mr. Berndt employed the bricklayers, I employed him to do that work and he employed the bricklayers. I do not know whether there was a written contract or not, mostly we get estimates from a bricklayer or sub-contractor, we seldom make a written contract such as this you have submitted here a while ago (referring to his own contract to erect the building), 'we take his estimate' * * * 'The estimate would state that he would lay the bricks for so much per thousand, this is a contract.' He further testified, as we have already said, that Berndt controlled the manner and method of laying the bricks, and he (the witness) had nothing to do with laying them except to see that they were properly laid," said this: "This evidence, taken in connection with that of Cowan's foreman, Tase, presents the question of fact for the jury whether Cowan in employing Berndt to lay the bricks gave him complete control of the erection of the walls of the building and of the persons employed by him to do the bricklaying."

A number of cases illustrating the application of these principles have been collected in *Schneider's Workmen's Compensation,* pars. 38, 39; 19 *Ann. Cas.* 7; and 14 *R. C. L.,* title "Independent Contractors," which illustrate the diffi-

culty of formulating any rule by which the question may be determined in any given case, more comprehensive and definite than the somewhat vague statement in *Deford v. Keyser,* 30 Md. 179, that the terms and manner of employment are for the jury, "it being for the court to declare the legal relation that existed between the parties upon any given state of facts." For the reasons stated we cannot say, as a matter of law, that Bogatsky was an independent contractor, or that the evidence in this case is not legally sufficient to permit the inference that Heller was an employee of Swerdlin, and in our opinion the trial court erred therefore in granting the appellees' A and E prayers.

The appellees' H prayer properly instructed the jury that there was in the case no evidence legally sufficient to show that Bogatsky was a sub-contractor, and we find no error in the refusal of the appellant's "G" prayer, because there is no evidence in the record of a joint employment.

The judgment appealed from will therefore be reversed and the case remanded for a new trial.

> *Judgment reversed and case remanded for a new trial, with costs to the appellant.*