## MANAHAN DRILLING CO. v. HOWARD et al.

No. 27666.    Oct. 26, 1937.

B. C. Davidson, for petitioner.

Butler, Brown & Rinehart, for respondents E. H. Moore and Liability Assurance Corporation.

Howell E. Hays, for respondent J. S. Howard, claimant.

CORN, J. This is an original action in this court to review an award of the State Industrial Commission.

It appears from the record that E. H. Moore was the owner of oil and gas leases covering what is known as the Fitts Pool near Ada in Pontotoc county, and that in the development of these leases he contracted with a number of drilling contractors to drill the wells, and that the drilling contracts were oral, the parties observing certain usages and customs in the drilling operations, rather than entering into written contracts specifying the details necessarily involved in the drilling of oil wells. In this particular case the Manahan Drilling Company was drilling a location known as Akers No. 4, and was being paid on a footage basis of $6 per foot. This company used its own drilling equipment and employed its own workmen and operated as an independent contractor. When the drilling reached the depth to where it was ready to drill in, Mr. Teis, engineer and general superintendent employed by E. H. Moore to check up on all drilling operations on his leases, suggested to Mr. Trippe, vice president and general superintendent of the Manahan Drilling Company, that the well be drilled in with the high pressure drill, advising him that the "high drill" was being used satisfactorily in bringing in other wells on the leases. It was then agreed that E. H. Moore would furnish the drill and would pay the Manahan Drilling Company $175 a day until the well was completed. The operation of the high drill required workmen experienced in operating it, and the claimant and other workmen who had been operating a high drill for one Carl B. King were employed by the Manahan Drilling Company to drill in Akers No. 4. The claimant, J. S. Howard, was the driller and was in charge of the other workmen employed to operate the high drill.

The claimant and his crew started to work on this job on June 1, 1935, and on June 4, 1935, the claimant was injured in an accident caused by a two-inch pipe blowing off of a mud pump and striking claimant upon his upper left arm and across his abdomen. The Manahan Drilling Company immediately provided medical attendance, and on June 6, 1935, made formal report of the injury to the State Industrial Commission, and the Industrial Commission fixed the rate of compensation at $18 per week. On November 8, 1935, the petitioner filed a motion to suspend compensation as of October 21, 1935, on the grounds that claimant was completely recovered from the injuries sustained on June 4, 1935, and on November 16, 1935, claimant filed an amended claim for compensation alleging the injury

and accompanying shock resulted in a nervous condition, and that distress and pain was suffered in the region of the stomach, and that claimant was totally and permanently disabled. The Industrial Commission also permitted the claim to be so amended as to bring in as additional respondents the said E. H. Moore and his insurance carrier, Liability Assurance Corporation, and the Manahan Drilling Company moved to dismiss the case as to itself and for judgment against the claimant and the respondents, E. H. Moore and his insurance carrier above named.

As grounds for said motion the Manahan Drilling Company alleged that the claimant was not its employee at the time of the accident, but was an employee of the respondent E. H. Moore; that it reported the case to the Industrial Commission through mistake and made voluntary payment of compensation and medical expense; and that claimant at the time of the accident was not under its supervision and control, but was under the supervision and control of the said E. H. Moore and in the performance of work for the said E. H. Moore. Hearings were held upon the motions, and the Industrial Commission found that claimant was in need of further medical treatment for said injuries, and found that claimant was employed by the Manahan Drilling Company at the time of sustaining said injuries, and ordered the Manahan Drilling Company to pay claimant compensation at the rate of $18 per week during temporary total disability, not to exceed 300 weeks, or until otherwise ordered by the commission.

The petitioner sought to show by its evidence that the respondent E. H. Moore exercised supervisory control over the work being performed by claimant at the time the injury was sustained in order to establish as a matter of law that the respondent and not the petitioner was the employer of claimant at the time, and by reason thereof was liable for the payment of the compensation awarded claimant; but, as we view the record, the evidence as a whole fails to establish the relation of master and servant between claimant and respondent E. H. Moore. Claimant testified that both Mr. Moore and Mr. Teis, an engineer employed by Moore as a field superintendent, were at the well while the high pressure equipment was being used by claimant and the other workmen, and that he considered that they had authority to direct the work and that they made suggestions as to how the work should be done, yet the claimant testified that he thought he was still in the employ of Carl

B. King until he was taken to the clinic following his injury, and was there told by an officer of the Manahan Drilling Company that he was an employee of said company. Mr. Teis testified that claimant was a skilled and experienced driller and needed no instructions or directions as to how the work should be done; that he, the witness, visited the well frequently at this stage of the operations as he did other wells on his employer's leases, but that it was his duty to see that the drilling contractors properly carried out and performed their contracts to drill the wells. The evidence shows that the claimant and the rest of the drilling crew were carried upon the pay roll of the Manahan Drilling Company and their time was kept by the timekeeper for said company, and that respondent E. H. Moore paid the Manahan Drilling Company $175 per day for the work, which included the wages of the workmen and the use of Manahan's equipment.

The general rule for determining the existence of the relation of master and servant is stated in 39 C. J. 35, as follows:

"The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Inasmuch as the right to control involves the power to discharge, the existence of the power to discharge is essential, and is an indicium of the relationship. * * *"

We do not consider the close attention given by the respondent Moore to the drilling operations in this instance sufficient as a matter of law to establish the relation of master and servant between said respondent and claimant when all the facts and circumstances in the case are taken into consideration. The existence of a definite understanding that the Manahan Drilling Company should retain its status as an independent contractor and be responsible for the completion of the well is manifested by the fact that Moore paid the drilling company the sum of $175 per day for the work, and that the drilling company carried these workmen, including the claimant, upon its pay roll. The fact that Moore and his field superintendent made frequent trips to the well, and perhaps gave suggestions and advice regarding the work, does not necessarily indicate that Moore had the right to control the work or to discharge the workmen. The fact that the Manahan Drilling Company immediately provided medical treatment for claimant and paid compensation for injuries for nearly four months without raising the question as to its liability, is an acknowledgment of its relation to the claimant as employer and of its liability for the payment of compensation for the injuries suffered.

The petitioner further contends that the Industrial Commission erred as a matter of law in finding that the respondent J. S. Howard was disabled as 'a result of said injury on June 4, 1935, beyond the date of October 21, 1935, on the ground that the finding and award of the commission is not supported by the evidence.

In the case of Board of County Commissioners of Tulsa County v. Bilby, 174 Okla. 199, 50 P. (2d) 398, this court held in paragraph 3 of the syllabus, as follows:

"Where there is an entire absence of any competent evidence upon which to base a material finding of the State Industrial Commission necessary to support an award of compensation, this court will declare as a matter of law that an award based upon such unsupported material finding is unauthorized and will vacate the same."

We have examined the record to determine whether there is such an absence of competent evidence as to give this court jurisdiction to review an award of the commission based upon its finding of facts, and we find sufficient competent evidence to support the finding and award of the commission, and we are of the opinion that the same should not be disturbed

The award of the Industrial Commission is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH and HURST, JJ., concur.