**JONES, Collector of Internal Revenue, v. GOODSON et al.**

**No. 2251.**

Circuit Court of Appeals, Tenth Circuit.

June 23, 1941.

---

Fred Youngman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Thomas G. Carney, Sp. Assts. to Atty. Gen., and Charles E. Dierker, U. S. Atty., and George H. McElroy, Asst. U. S. Atty., both of Oklahoma City, Okl., on the brief), for appellant.

E. M. Goodson, of Oklahoma City, Okl. (A. Wood Rigsby, of Oklahoma City, Okl., on the brief), for appellees.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The appeal in this case presents the question of the liability of Y & Y Operating Company for certain social security taxes under section 804 of the Social Security Act, 49 Stat. 620, 637, 42 U.S.C.A. § 1004.

The company was organized in 1932, was incorporated in 1934, and is engaged in the taxicab business in Oklahoma City. It has a central office and garage, two downtown stations, a secretary and treasurer, a day manager, a night manager, a cashier, a bookkeeper, a claim adjuster, five telephone operators or dispatchers, a garage foreman, three mechanics, a grease man, four porters, and two starters. It maintains a telephone exchange at its main office and twenty or twenty-five call stations at various places throughout the city. It operates under its name and insignia approximately seventy-eight taxicabs. About half of them belong to the company and the other half are owned by the drivers or others. Its drivers are members of a local union affiliated with the American Federation of Labor. The company and the union entered into a master contract dated November 3, 1937, and the company and other taxicab companies engaged in business in Oklahoma City and the union entered into a similar contract dated November 25, 1938. These contracts provide, among other things, that the union shall furnish the company competent drivers; that the company shall lease taxicabs only to drivers who are members of the union; that the company shall have the absolute right at its own discretion to reject the application of any person seeking employment, and to suspend or dismiss any lessee for violation of the printed rules then or thereafter in effect; that the lease payment for a car owned by the company shall not exceed $2.60 plus sales tax for each shift of twelve hours, or a tariff of $2.15 plus sales tax for an individually owned car for each twenty-four hour period; that a specified maximum mileage per shift shall be allowed for company owned cars and that the driver shall pay a fixed sum for all additional mileage; that the company shall keep the cars owned by it in repair and shall furnish all oil for them; that the drivers of company owned cars shall buy their gasoline from the company, and that the drivers of individually owned cars shall buy both their gasoline and oil from it; that the company shall have the right at its option to operate the taxicabs on a percentage basis, in which event the fares collected shall be divided on a specified basis; that the company shall recognize the union as the exclusive bargaining agency; and that controversies shall

be adjusted in the manner outlined. The company and the drivers have no other express contract. In the operation of the business, a driver takes out a company owned car for a twelve-hour shift. On return he pays the company for the gasoline used and the sum of $2.60 plus tax, and he retains the balance of the money which he collected as fares. In many instances another driver immediately takes the car out for the following twelve-hour shift on the same terms. Drivers operating their own cars or individually owned cars pay the company $2.15 plus tax for each twenty-four-hour period. An owner may drive his car for one twelve-hour shift and then another driver operate it for the other shift. Individual owners keep their cars in repair and furnish the oil for them. Purchase from the company of gasoline for all cars, both company owned and privately owned, is made certain by a lock on the gas cap. The $2.60 for a company owned car, and the $2.15 for an individually owned car, is paid without regard to the amount the driver has taken in as fares. It is paid even though less has been received. And the company does not require any accounting in respect to the amount the driver has taken in or retained. All cars bear the insignia and telephone number of the company on each side and on the back, and the name of the driver does not appear anywhere except on his driver's permit which is displayed on the inside of the car. The company bears all expenses of operation. A part of the money received from the drivers goes into a fund which the company maintains on deposit with the city out of which obligations for damages resulting from negligence in the operation of taxicabs are paid. Drivers are not required to operate in certain zones or on fixed routes but are free to operate anywhere in the city. They are required to call the central office on the telephone hourly in order that the company may know that they are operating and are inside the city limits as it is not authorized to operate outside. The company does not have any printed rules, but it has unwritten rules with which the drivers are familiar, and it holds safety meetings from time to time which the drivers are supposed to attend. Drivers are required to call the office in case of an accident, take the injured person to a hospital, and make report of the circumstances attending the accident. Blanks are furnished them for the purpose of making such reports. A driver is not required to accept a call, but if he refuses too many the company declines to let him have a cab, and the relation is ended. If a car is used for an unauthorized purpose the company has "to step in and take care of him". If he violates an ordinance in the operation of the car the company has "to restrain him there". Complaints of overcharge are frequently made to the company. If it is the first offense of a driver, the manager calls him into the office, talks with him, tries to show him that overcharging does not help him or the company, tries to get him to cooperate with the company in charging the uniform rates, and then sends him back to work. If a driver develops a bad record for accidents, or is not courteous to the public or injures the company's reputation, the company refuses to let him have a car any further.

The Commissioner of Internal Revenue determined that the relationship between the company and its drivers was that of employer and employee and exacted of the company social security taxes for the years 1937 and 1938. The amount was paid under protest, a claim for refund was rejected, and this suit followed. The court held that the drivers were not employees of the company within the purview of the act, and that the demand for the tax was erroneous and illegal. Judgment was rendered against the collector and he appealed.

By Title VIII, § 801 et seq., of the Social Security Act, 42 U.S.C.A. § 1001 et seq., taxes are levied upon employers and employees, but this case concerns itself only with the tax on employers. Section 804 provides that in addition to other taxes, every employer shall pay an excise tax with respect to having individuals in his employ at the rates therein specified. With an exception which is not material here, section 811 defines "wages" to mean all remuneration for employment including the cash value of all remuneration paid otherwise than in cash; and with certain exceptions which have no present bearing, it defines "employment" to mean any service of whatever nature performed in the United States by an employee for his employer; section 808 authorizes the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to make and publish rules and regulations for the enforcement of the title; and Article 3 of Regulation 91, promulgated under the statute, amplifies the definition of "employees" by providing that "the relationship * * * must * * * be the legal relationship of

employer and employee. Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. * * * In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee."

█ The tax imposed upon an employer is denominated an excise tax, and it has been judicially determined and sustained as such a tax levied upon the privilege of establishing and maintaining the relationship of employer and employee. Steward Machine Co. v. Davis, 301 U.S. 548, 57 S. Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293; Helvering v. Davis, 301 U.S. 619, 57 S. Ct. 904, 81 L.Ed. 1307, 109 A.L.R. 1319. The tax is confined to cases where that relationship exists. It does not extend to instances where persons performing services are independent contractors.

█ Little difficulty has been encountered in defining in the abstract the relationship of master and servant and that of an independent contractor, and in drawing the line of distinction between the two. The relationship of master and servant exists where the employer has the right to direct and control the method and manner in which the work shall be done and the result to be accomplished, while an independent contractor is one who engages to perform service for another according to his own method and manner, free from direction and control of the employer in all matters relating to the performance of the work, except as to the result or the product. The line of separation between the two is the degree of direction and control.

In the former direction and control cover both method and manner of doing the work and the result produced; in the latter direction and control are limited to the result and do not apply to the method and manner of the service rendered. Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440; Casement v. Brown, 148 U.S. 615, 13 S.Ct. 672, 37 L. Ed. 582; Southern Construction Co. v. State Industrial Commission, 112 Okl. 248, 240 P. 613; Oklahoma Publishing Co. v. Greenlee, 150 Okl. 69, 300 P. 684; Drumright Gas Engine Co. v. Sherrill, 173 Okl. 147, 46 P.2d 921; Manahan Drilling Co. v. Howard, 181 Okl. 124, 72 P.2d 802. But courts have met trouble in making application of these general abstract principles to variant facts.

█ The relationship of master and servant may be express or implied; it is not essential that the name of the servant be on the payroll of the master, Caraher v. Sears, Roebuck & Co., 124 Conn. 409, 200 A. 324; there may be no compensation to the servant, Baltimore & Ohio Southwestern Ry. Co. v. Burtch, 263 U.S. 540, 44 S. Ct. 165, 68 L.Ed. 433; Johnson v. Ashland Water Co., 71 Wis. 553, 37 N.W. 823, 5 Am.St.Rep. 243; Haluptzok v. Great Northern Ry. Co., 55 Minn. 446, 57 N.W. 144, 26 L.R.A. 739; Napier v. Patterson, 198 Iowa 257, 196 N.W. 73; Lajoie v. Rossi, 225 Mo.App. 651, 37 S.W.2d 684; John Hancock Mutual Life Ins. Co. v. Dorman, 9 Cir., 108 F.2d 220; or the compensation may be paid by a third person, not the master, Green v. Sansom, 41 Fla. 94, 25 So. 332; Indian Hill Club v. Industrial Commission, 309 Ill. 271, 140 N.E. 871; Wicklund v. North Star Timber Co., 205 Minn. 595, 287 N.W. 7; McGorry v. Sterling Supply Corporation, 116 Pa.Super. 563, 176 A. 808; Mississippi River Fuel Corporation v. Morris, 183 Ark. 207, 35 S.W.2d 607; Barton-Mansfield Co. v. Bogey, 201 Ark. 860, 147 S.W.2d 977; Bogatsky v. Heller, 152 Md. 18, 135 A. 416. And the right of discharge is a factor strongly indicating that the relationship exists, Manahan Drilling Co. v. Howard, supra; Aisenberg v. C. F. Adams Co., 95 Conn. 419, 111 A. 591; Jack & Jill v. Tone, 126 Conn. 114, 9 A.2d 497; Beaverdale Memorial Park v. Danaher, 127 Conn. 175, 15 A.2d 17; Swam v. Aetna Life Insurance Co., 155 Wash. 402, 284 P. 792; L. B. Price Mercantile Co. v. Industrial Commission, 43 Ariz. 257, 30 P.2d 491; Bogatsky v. Heller, supra; Davidson v.

American Drug Stores, La.App., 175 So. 157; Frost v. Blue Ridge Timber Corporation, 158 Tenn. 18, 11 S.W.2d 860.

■ A reasonable measure of direction and control over method and means of performing the service is a constituent element of the relationship of master and servant as distinguished from that of master and independent contractor, still the direction and control need not relate to every detail.

■ It must be presumed that Congress was cognizant of these well established principles at the time of the enactment of the statute, and that if different guides were intended for ascertaining whether the relationship of employer and employee existed between parties in the application of the statute, appropriate language would have been used to indicate such purpose. There is nothing in the act or its legislative history which indicates such an intent. Furthermore, the regulation adverted to blue prints with meticulous care the elements of the relationship in strict harmony with uniform judicial pronouncements. Congress has convened several times since the regulation was promulgated and has not evidenced its disapproval in any manner. That acquiescence must be construed as approval. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796; Skelton v. United States, 10 Cir., 88 F.2d 599.

■ This company has and exercises the right to say whether a driver shall work on the day or night shift; to say which car he shall drive if he operates company owned cars; to require that the company's insignia and telephone number be placed on all individually owned and operated cars; to require that drivers purchase all of their gasoline from the company, and, in addition, that drivers of individually owned cars buy all of their oil from it; to require that drivers operate only within the city limits, and not go outside; to require that they telephone the main office hourly giving their whereabouts; to require that they maintain a good record for accidents; to require that they be courteous to customers; and to require that they be presentable in their personal appearance. It has the right of discharge for the violation of infraction of these several requirements; and it has the right to promulgate rules from time to time, and to discharge drivers for the violation of them. These rights of direction and control are substantial, and they relate to the method and means of performing the service, not solely to the results. While they do not extend to every feature of the work, they certainly constitute a substantial degree of authoritative control in the method and manner of conducting the business. Appropriate application of the principles to which reference has been made leads to the conclusion that the several taxicab drivers were not independent contractors; that instead, the relationship existing between the company and the drivers was that of employer and employee within section 804, supra. Cf. Lassen v. Stamford Transit Co., 102 Conn. 76, 128 A. 117; Meridian Taxicab Co. v. Ward, 184 Miss. 499, 186 So. 636, 120 A. L.R. 1346; Richmond v. Clinton, 144 Kan. 328, 58 P.2d 1116.

The company places strong reliance upon Texas Company v. Higgins, 2d Cir., 118 F.2d 636, decided April 4; Indian Refining Co. v. Dallman, 7 Cir., 119 F.2d 417, decided April 11; and Barnes v. Indian Refining Co., 280 Ky. 811, 134 S.W.2d 620. In the first case Thomas was distributer for the products of The Texas Company in a certain territory in Virginia. Products were consigned to him, and he sold them and remitted the proceeds when collected. The company paid the freight and taxes on the products sold, and Thomas sold at prices fixed by it. But he furnished his own tanks, trucks and other equipment, selected and discharged employees at will, fixed and paid their wages, determined questions relating to hours and working conditions, exercised full control and responsibility for the acts of the employees, and otherwise conducted the business according to his own judgment. It was held that the distributer was an independent contractor, and that he and those working under him were not employees of the company. In the other two cases, Kolb was distributer for the products of Indian Refining Company at two places in Kentucky. He conducted the business in much the same manner as did Thomas in Virginia. It was held that Kolb was an independent contractor and that he and those employed by him were not employees of the refining company. But elucidation is unnecessary to make it clear that the facts in those cases were decisively unlike the facts presented here.

The judgment is reversed and the cause remanded.