**NEBRASKA NAT. HOTEL CO. v. O'MALLEY, Collector of Internal Revenue.**

Civ. A. No. 489.

District Court, D. Nebraska, Omaha Division.

Oct. 2, 1945.

William J. Hotz, of Omaha, Neb., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Harold D. Cohen and Andrew D. Sharpe, Sp. Assts. to Atty. Gen., and Joseph T. Votova, U. S. Atty., of Omaha, Neb., for defendant.

DONOHOE, District Judge.

In this case the plaintiff brings action against the defendant, as Collector of Internal Revenue, seeking to recover moneys paid to the defendant as such collector, under protest, on the 6th day of November, 1942, and for which a claim for refund was filed and rejected.

The claim consists of the following items:

| | | |
|---|---|---|
| (a) Social Security Tax from January 1, 1940, through September 30, 1942....... | | $1,332.24 |
| (b) Unemployment tax for the year 1940 ........................... | $760.64 | |
| Plus 6% interest to October 30, 1940 ........................... | 79.87 | 840.51 |
| (c) Unemployment tax for the year 1941 ........................... | $687.68 | |
| Plus 6% interest to October 31, 1942 ........................... | 30.95 | 718.63 |
| Total ................................ | | $2,891.38 |

The disputed claim grows out of social security taxes levied against the plaintiff covering certain contracts made and entered into by the plaintiff with some twenty-five different orchestra leaders to furnish music and musicians for various en-

gagements from one to four weeks each. These entertainments were contracted for and rendered in the Paxton Hotel, owned and operated by the plaintiff.

The contracts were of two classes, referred to in the evidence as "Form A" and "Form B". In the "Form A" contracts, the plaintiff was designated as the employer, party of the first part, and the band or orchestra leader as representative of the employees, party of the second part. It was recited that it was an agreement of employment between the party of the first part, the employer of (different numbers of musicians, members of Local No. ————), parties of the second part, by their agent. Then there followed a statement of the services and conditions of service, from which I quote a sample from one of the contracts: "Service to consist of nine musicians and girl singer, advertised as 'Music by Gary', to play in Paxton Hotel, Monday through Friday: 4 til 9; and 9:30 til 12:30 A. M. Saturday 12:45 til 2:45; 7 til 9; 10 til 1:00 A. M. Sunday; 7 til 8:45 P. M. Above hours subject to change by mutual agreement. Musicians employed hereunder may work thirty hours weekly at the rate of $37.50 per man per week; Leader or contractor 50% additional. * * * Price $386.25 per week for 30 hours work. Overtime at $1.25 per hour per man. The individual musicians are the employees, to whom the employer is directly responsible. Any payment by the employer to the musicians' representative shall be as their agent for distribution among them. Settlement to be made on or before ........ End of each week. * * * Musicians of any band or orchestra performing on this engagement must be members of the American Federation of Musicians. * * * As the Musicians engaged under the stipulations of this contract are members of the American Federation of Musicians, nothing in this contract shall be so construed as to interfere with any obligation which the Musicians owe to the American Federation of Musicians by reason of their prior obliga-

tions to the American Federation of Musicians as members thereof."

"Form B", which is the contract really involved in this case, as will later appear, recites that it is a contract for the personal services of musicians made by the undersigned employer (Paxton Hotel) and seven musicians, referred to in the contract as employees "represented by the undersigned representative" (orchestra leader). The terms of the contract are recited as follows: "That the employer employs the personal services of the employees, as musicians severally, and the employees severally, through their representative, agree to render collectively to the employer services as musicians in the orchestra under the leadership of ———— (orchestra leader)." "* * * The employer shall at all times have complete control of the services which the employees will render under the specifications of this contract. On behalf of the employer the Leader will distribute the amount received from the employer to the employees, including himself, as indicated on the opposite side of this contract, or in place thereof on separate memorandum supplied to the employer at or before the commencement of the employment hereunder and take and turn over to the employer receipts therefor from each employee, including himself. The amount paid to the Leader includes the cost of transportation, which will be reported by the Leader to the employer. The employer hereby authorizes the Leader on his behalf to replace any employee who by illness, absence, or for any other reason does not perform any or all of the services provided for under this contract. The agreement of the employees to perform is subject to proven detention by sickness, accidents, or accidents to means of transportation. * * * The musicians performing services under this contract must be members of the American Federation of Musicians and nothing in this contract shall ever be so construed as to interfere with any obligation which they may owe to the American Federation of Musicians."[1]

---

[1] The pertinent provisions of the American Federation of Musicians By-Laws are:

Section 29 of Article X: "Members of the Federation are only permitted to accept, solicit or negotiate engagements to play in bands or orchestras from members who contract to furnish bands or orchestras, never from the employers or the agents of such to whom the band or orchestra is furnished."

Section 45 of Article X: "Any member, leader or contractor employing members of the A. F. of M. on any traveling, location or out-of-town engagement shall employ only such members who are in good standing in their respective Locals and

"It is agreed that all the rules, laws and regulations of the American Federation of Musicians, and all the rules, laws and regulations of the Local in whose jurisdiction the musicians perform, insofar as they are not in conflict with those of the Federation, are made part of this contract."

The defendant now concedes that the taxes levied on all contracts of the "Form A" Class were erroneous and that the plaintiff is entitled to a refund of all of such items, but contends that by reason of the change in the contracts from "Form A" to "Form B", and the specific language contained in "Form B", that the relationship of the Hotel Company to the musicians has changed to that of employer and

---

carry their Local Union Cards paid up to date. For any violation of this section he shall be subject to a fine of not less than $10.00, nor more than $50.00 for each and every violation."

Section 24 of Article IX: "Locals have a right to insist that Local leaders or contractors engage Local members to fill miscellaneous engagements outside of Local jurisdiction."

Section 10 of Article XIII: "In the selecting of the members of the orchestra the leader or manager of same need not confine himself to the membership of the Local in whose jurisdiction the orchestra is organized."

Subsection L: "A member cannot form a traveling dance orchestra in the jurisdiction of the Local to which he belongs, and make such jurisdiction the headquarters of the orchestra, and compete for and fill local engagements with same."

Section 10–K of Article XIII: "All contracts between leaders and members of traveling dance orchestras wherein a specified number of weeks is not named can be cancelled by either party giving two weeks' notice to the other."

Section 48 of Article X: "All collections for the engagement must be made by the member who furnishes the orchestra and not by the agent. Members of the orchestra must be paid by the contracting member or leader of the band or orchestra and not by the agent."

Section 23 of Article X: "A contracting member who assumes the responsibility for the payment of a member's services is bound by his action, and cannot escape his obligation by claiming the protection of any Local or A. F. of M. Law."

Standing Resolution 58 in Article XIX of the By-Laws: "To Promote His Business, a leader may borrow money in any manner not contraventive of Standing Resolution No. 58 or any other law, rule or resolution of the Federation, but he must not make any arrangement and/or agreement directly or indirectly subjecting him to interest and/or bonus of more than 10% per annum nor more than a total of 25% of the total sum borrowed and which is to be repaid."

"Leaders of bands or orchestras are prohibited from directly or indirectly, through any device or method whatever, acquiring any financial interest of whole or part ownership in any other band or orchestra, provided that a leader may wholly, but not in part, own any other band which accepts or fills engagements under his own name."

Section 48 of Article X: "Leaders, their agents or contracting members, are prohibited from furnishing singers free of charge on any and all engagements."

Section 10-B of Article XIII: "For traveling dance engagements contractors must charge for their engagements not less than 10 per cent more than the price of the Local in whose jurisdiction the engagement is played and in addition thereto must contract for the engagement in conformity with all other rules of the Local."

"If transportation for member or members is by privately owned automobile or bus, it shall be unlawful for any leaders to accept or any members to fulfill an engagement which necessitates traveling by auto or bus a distance in excess of 300 miles within any 24 hours."

Section 10-C of Article XIII: "A contractor or leader, as the case may be, in every case before an engagement is played, must submit his contract for same to the Local Union in whose jurisdiction same is played or in the absence of a written contract file a written statement with such Local fully explaining therein the conditions under which same is to be fulfilled, naming the place wherein same is to be played, the amount of money contracted for, the hours of the engagement, as well as the names of the members who will play same and the Locals to which they belong, their Social Security numbers and the actual amount of money paid each individual sideman, which cannot be less than the minimum Local scale plus the Federation subcharge.

"In addition to furnishing the foregoing information, a contractor or leader, as the case may be, must, before the engagement is played, inform the Local in whose jurisdiction the engagement is played the amount collected as to transportation charges and a point from which the transportation charges are made, and the exact and correct amount of percentage which will be paid to an agent or agents as compensation for booking the engagement."

employee, and hence the assessment of the taxes is valid.

To determine the question presented necessitates a construction of the application of the Federal Insurance Contributions Act and the Federal Unemployment Tax Act, Section 1400 et seq. and Section 1600 et seq., Title 26 U.S.C.A. Internal Revenue Code, or, simply stated, the question is whether musicians, including leaders of various orchestras and bands, who performed at the Paxton Hotel, were employees of the Hotel within the meaning of Sections 1426(b), and 1607(c) of the Internal Revenue Code.

■ It appears from the evidence, as is likewise a matter of common knowledge, that orchestras such as are involved in this litigation are known as "named orchestras" or "named bands" and are numerous throughout the country. They are made up of a number of persons especially trained in music and entertainment under the leadership, if successful, of a specially qualified leader. These qualifications must necessarily include business leadership, showmanship, personality, special talent in music and with musical instruments, and talent for organization. The inception of the band or orchestra is generally the brain child of the leader. He plans the number of performers, the musical instruments which are to be played, the number and type of each, and generally plans a classification of his organization with reference to the type of music and performance. With these plans perfected, he then seeks the assistance of talented musicians especially trained on the different instruments which he plans to include in his orchestra. With these individuals, he contracts separately, either express or implied, for their services to either himself individually or to the organization as a whole. For the purpose of the organization, the leader must advance or secure the contribution from the musicians to obtain the necessary moneys covering expenses such as the cost of music, musical instruments, and the expenses of rehearsals. In the selection of the various musicians, many auditions of applicants are necessary in order to select those best fitted. When the organization is perfected, the leader undertakes to secure commercial engagements from dance halls, hotels, theaters, and so forth. These engagements are largely obtained through booking agents. The members usually find it necessary to join the American Federation of Musicians and the contract for the services of the organization is generally dictated by the Federation of Musicians. In the different orchestras involved in this case the musicians were required to be members of the Federation, and the by-laws of the Federation are made a part of that contract.

Attached hereto, marked "Note No. 1", are pertinent provisions of the by-laws made a part of the contracts.

If, under the provisions of Section 1400 et seq., Title 26 U.S.C.A. Int.Rev.Code, the persons constituting the orchestra or band are employees, then the employer is liable for the tax of 1% based upon the wages paid to all of the employees, and an additional 1% is assessed against each employee on his wage. This sum is withheld by the employer and, with his own 1%, paid to the Collector of Internal Revenue at stated intervals, and under the Unemployment Act, Section 1600 et seq., Title 26 U.S.C.A. Int.Rev.Code, the employer of eight or more persons is liable for a tax of 3% of the wages paid by the employer to his employees.

■ By the terms of the statutes and the regulations of the Commissioner of Internal Revenue, which follow the common law, the term "employment" means the legal relationship of employer and employee, and this relationship must exist between the persons for whom the services are performed and the individual or individuals who are to perform or have performed, and an independent contractor and his men do not come within the meaning of the term "employment".

Regulation 106 (1940, Sec. 402.204) states: "In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee. Generally, physicians, lawyers, dentists, veterinarians, contractors, subcontractors, public stenographers, auctioneers, and others who follow an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees." The Regulation further provides: "If the relationship of employer and employee exists, the designation or description of the

relationship by the parties as anything other than that of employer and employee is immaterial. Thus, if such relationship exists, it is of no consequence that the employee is designated as a partner, coadventurer, agent, or independent contractor."

Regulation 107 applying to the Unemployment Act contains identical provisions as Regulation 106 above quoted.

Then, we find common to both Regulations the following provision: "Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done."

In Radio City Music Hall Corporation v. United States, 2 Cir., May 3, 1945, 135 F.2d 715, 717, these regulations were examined and considered and the Court held: "We accept Article 3 of Regulation 91 (same as Regulations 106 and 107) as an authoritative definition of the distinction between an 'employee' and an 'independent contractor': it is really no more than a gloss upon the definition contained in Justice Gray's opinion in Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 523, 10 S.Ct. 175, 33 L.Ed. 440. We assumed its conclusiveness in Texas Company v. Higgins, supra, 2 Cir., 118 F.2d 636, 638, and so have the Tenth Circuit (Jones v. Goodson, 121 F.2d 176, 179) and the Seventh (Williams v. United States, 126 F.2d 129, 132). The test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said, though the regulation redundantly elaborated it. In the case at bar the plaintiff did intervene to some degree; but so does a general building contractor intervene in the work of his subcontractors. He decides how the different parts of the work must be timed, and how they shall be fitted together; if he finds it desirable to cut out this or that from the specifications, he does so. Some such supervision is inherent in any joint undertaking, and does not make the contributing contractors employees."

In the case of Williams v. United States, 7 Cir., 126 F.2d 129, 133, the form of contract prevailing prior to June 1, 1941 (referred to herein as "Form A"), was involved. In the case it was the contention of the Government that musicians employed by a hotel under circumstances similar to those in the case at bar were independent contractors. The trial court (D.C., 38 F.Supp. 536) held that the relationship between the hotel and the musicians was that of employer and employee. The Circuit Court reversed that holding and in the opinion stated: "For reasons stated, no good purpose could be served in an attempt to analyze the many authorities cited and relied upon. There are two cases, however, where the facts are quite similar and where the contentions made by the respective parties are almost identical with those argued here. Hill Hotel Co. v. Kinney, 138 Neb. 760, 295 N.W. 397, and Unemployment Compensation Commission v. Mathews, 56 Wyo. 479, 111 P.2d 111. In each of them it was held that the leader of a band or orchestra was an independent contractor rather than an employee of the establishment."

In the case at bar the defendant now concedes that, under the foregoing authorities and others which we have not cited, the law is now settled that under the terms of "Form A" contracts, the orchestra or band organization is an independent contractor and not an employee of the hotel, and, upon the trial of this case, conceded that the plaintiff was entitled to judgment for the moneys paid the defendants under "Form A" contracts, but earnestly urges that by the language of contract "Form B" the relationship changes back to that of employer and employee, notwithstanding the fact that from the evidence it appears that no change whatever seems to have taken place in the relationship of the parties as they performed and undertook to carry out the contract of engagement.

It is also in evidence that the "Form B" contract was a contract formulated by the officers or agents of the American Federation of Musicians and imposed upon the members, under direction, that they must sign contracts for any engagement, traveling or local, on this form, and none other. Counsel for the defendant puts much stress upon the provision in this contract which specifies that the employer has a right of control and that the fact that such control was not exercised by him, but was continued to be exercised by the leader of the

orchestra, could not prejudice his right of control. In addition to this provision, we observe a further provision in the contract which purports to impose in the leader of the band or orchestra, in effect, the right to hire and fire; that is, by giving him the right to select and discharge the performers; in other words, a transfer back to the leader of a part, at least, of the supervision or direction which the other terms of the contract attempt to impose in the hotel or its manager. The contract must be construed as a whole in the light of the provisions of the statutory law and the regulations of the department.

In the cases of Bartels v. Birmingham and Geer v. Birmingham, Iowa 1945, 59 F.Supp. 84, 88, this "Form B" contract was construed by Judge Dewey under facts very similar to the facts involved here. Judge Dewey, in his very well-considered opinion, among other things, stated:

"It is the contention of the Government and the intervenors that these contracts (form B) are conclusive of an employer-employee relationship. I cannot agree. It may be an element that may be considered by the fact finder if of any assistance in determining what is the true relationship.

"The leading case on the subject of the conclusive effect of such contracts is perhaps Griffiths v. Commissioner, 308 U.S. 355, 358, 60 S.Ct. 277, 278, 84 L.Ed. 319, wherein that court said: 'Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed * * *. Taxes cannot be escaped "by anticipatory arrangements and contracts however skillfully devised * * *."' And in Moline Properties v. Commissioner, 319 U.S. 436, 439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499, it is said: 'In general, in matters relating to the revenue, the corporate form may be disregarded where it is a sham or unreal.' And there are authorities holding that, in tax matters, the courts are not interested in the terminology of the contract but that they look to the true situation to see whether there is in fact employer-employee relationship or the relationship of an independent contractor."

Also, "The purpose of a contract is to express the intention of the parties regarding the subject matter. As between the parties the agreement is generally conclusive as to such intent, but as against a third person the true intent may be shown.

It gets us back to the pronouncement of the Supreme Court above referred to in Griffiths v. Commissioner, 308 U.S. 355, 358, 60 S.Ct. 277, 278, 84 L.Ed. 319, that 'Taxes cannot be escaped "by anticipatory arrangements and contracts however skillfully devised."'"

From my study of the provisions of "Form A" and "Form B" contracts, I find no essential difference in the meaning of the language used. In "Form A" the first party is referred to as "Employer" and the members of the orchestra as "Employees". The words "Employer" and "Employees" imply all of the elements which constitute the legal definitions of the words. By "Form B" the parties seek to confer all of the elements and rights which are legally embodied in the word "Employer". The parties were well aware and understood that only the leader of the band could exercise authority to direct, control, hire and fire, or otherwise exercise any substantial direction of the work. Any attempt to do so on the part of the management of the hotel would utterly destroy the value and efficiency of the musical organization. The hotel management were without training or natural talents, and were unskilled in the musical profession. Under the practice the hotel company had to accept the organization as a whole, and, as stated, no change whatever was made in the relationship of the parties after the "Form B" contract was prescribed. The provisions of the statutes and the pertinent regulations of the Treasury Department exempt from the provisions of these acts those persons who follow an independent trade, business or profession holding themselves out for hire, the result of which places them in the status of independent contractors.

We, therefore, conclude that the musicians in the case at bar were at all times independent contractors while engaged by the plaintiff. Therefore, plaintiff is awarded judgment for all of the refunds prayed in its complaint.

Counsel for plaintiff will prepare findings of fact and conclusions in detail in keeping with this memorandum, together with conclusions of law as herein stated. The proposed findings and conclusions should be submitted to counsel for the defendant for approval as to form. If there should be disagreement, then it should be submitted to the Court for settlement.