## PARTY CAB CO. v. UNITED STATES.

### 46 C 308.

District Court, N. D. Illinois, E. D.
Oct. 22, 1947.

Phillip E. Freed, Jules R. Green, and Theodore C. Weinberg, all of Chicago, Ill., for plaintiff.

Otto Kerner, Jr., U. S. Dist. Atty., of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

Plaintiff brings this suit to recover $2217.26, alleged overpayments of taxes for 1938, claimed by plaintiff to have been illegally assessed and collected under the provisions of Titles VIII and IX of the Federal Social Security Act, 42 U.S.C.A. §§ 1001 et seq., 1101 et seq., and the provisions of Sections 1400, 1410 of the Federal Insurance Contributions Act and Section 1520 of the Federal Unemployment Compensation Act, 26 U.S.C.A. Int.Rev. Code, §§ 1400, 1410, 1520. Jurisdiction is based on Section 24 (20) of the Judicial Code, as amended, 28 U.S.C.A. § 41 (20).

Plaintiff is an Illinois corporation organized "to operate taxi cabs and automobiles for hire as a public and private carrier of freight and passengers; to buy and sell and deal in automobiles." In 1938 Party Cab Company requested and had issued to it by the City of Chicago twenty-two licenses under ordinances which provided for the operation of taxi cabs for hire. The Cab Company at that time owned two automobiles, a repair truck and twenty-five automobiles equipped to operate as taxi cabs, all painted in the same manner and bearing the name of plaintiff. It was listed in the classified telephone directory as offering taxi cabs for hire; maintained two private telephone lines to hotels; employed telephone operators who received telephone calls for taxi service; and employed mechanics and tire men to service its vehicles. It paid the meter inspection fees, wheel taxes, and all expenses incurred in the operation of the taxi cabs, and also secured the state and city licenses and the personal injury insurance required by Illinois law, as well as the hack licenses from the City of Chicago, without which taxi cabs for hire may not operate.

The taxi cabs in question are operated by drivers pursuant to an oral agreement between the drivers and the Party Cab Company. A driver is assigned a particular taxi cab for a single day or night shift, which shift begins and ends at a time determined by plaintiff. When a driver takes a cab out from plaintiff's garage he first ascertains whether its tank is filled with gas and whether it is in need of oil. If it needs gas or oil he fills the tank with gaso-

line and puts in the necessary oil from a supply of gasoline and oil furnished by plaintiff. The evidence is that the drivers are not required to secure this gasoline and oil from plaintiff, but do so as a matter of convenience. When a shift is finished the driver returns the taxi cab to plaintiff's garage, where he refills the gasoline tank and puts in oil, paying plaintiff for same, as well as paying a specified amount for the use of the cab during the single shift. The drivers retain the fares collected by them from passengers, pay plaintiff for the use of the car for a shift, pay for all gas and oil used by them, and buy their own caps, while plaintiff pays all other expenses for operation of the cab, including repairs found necessary during the shifts. Drivers obtain business by cruising on the streets or from telephone calls. Once a week, and sometimes only once in a month, plaintiff called meetings of the drivers to give the "instructions on safe driving, forbidding drinking while on duty, how to avoid accidents, what to do in case of accident, and what to do with articles left in the cabs by passengers." Occasionally some of the managerial employees would drive around the city streets in company owned cars to observe how the drivers operated the taxi cabs.

Plaintiff contends that such drivers were not employees but rather were lessees of the cabs and therefore independnt contractors, and that since they made no accounting of their earnings to plaintiff such earnings were not wages. Defendant on the other hand urges that the drivers were employees of plaintiff, and that the fares collected by them were wages or remuneration for their employment within the meaning of the Act.

The question to be determined is whether under Titles VIII and IX of the Social Security Act, the drivers of plaintiff's taxi cabs were actually its employees, thus rendering plaintiff subject to the tax, or whether they were, as urged by plaintiff, lessees and therefore independent contractors.

The drivers admittedly do not own the cabs and their right to use them exists only from day to day under an oral agreement with plaintiff Cab Company. The drivers had no telephone listing and answered telephone calls for cabs only through the Party Cab Company's facilities. If a driver disobeyed any of plaintiff's rules or regulations he would not be permitted to take out and operate a cab, which resulted in his being out of a job and consequently out of business.

No driver was permitted to operate a taxi cab during a specified shift other than the driver to whom such cab was assigned.

Plaintiff is registered with the City of Chicago as the owner of the cabs, all of the licenses are in its name, and it pays all of the license fees and taxes levied by the City, the State of Illinois, and the United States. All drivers, in order to operate cabs, make their arrangements with the Party Cab Company, and all such cabs bear the Party Cab Company's name.

In the case of Checker Taxi Company v. Carter Harrison, etc., Nos. 2510 and 2632, consolidated, decided by this court in 1942, the drivers were the equitable owners of the cabs they used, and their agreements with the Cab Company ran from month to month. This court there held that such drivers were employees and not independent contractors. In the instant case the drivers do not own or furnish the cabs, and their right to use them exists only from day to day at the pleasure of the Party Cab Company.

Plaintiff introduced the evidence of two drivers who testified that they usually drove one special cab, which they filled up with gas and oil at plaintiff's garage before starting on a shift. That they paid plaintiff $8.15 or $8.40 per day for the use of the cab during a day shift, and $9.15 for use of one during a night shift. In addition they paid for all oil and gas used by them, and that they kept whatever they made from fares in operating the cab, making no reports to plaintiff of such fares, and that they kept no records of the amount of fares collected by them. That they roamed the streets to pick up fares, and sometimes drove past the Cab Company's offices; that if there happened to be a call from a passenger at the office, they might or might not take it. That each driver determined for himself when he would drive and when he would not, and that they belonged to no Un-

ion. That the prices at which a driver could secure a cab for a shift were posted on a bulletin board at the Cab Company's offices.

In Jones v. Goodson, 121 F.2d 176, 180, the Circuit Court of Appeals for the Tenth Circuit held that the master and servant relationship exists where the employer has the right to direct and control the method and manner in which the work shall be done and the result to be accomplished, while an independent contractor is one who engages to perform service for another according to his own method and manner free from direction and control of the employer in all matters relating to performance of work except as to its result or product. In that case the court said:

"A reasonable measure of direction and control over method and means of performing the service is a constituent element of the relationship of master and servant as distinguished from that of master and independent contractor, still the direction and control need not relate to every detail."

The recent case of United States of America v. Silk (Harrison v. Greyvan Lines, Inc.) 331 U.S. 704, 67 S.Ct. 1463, 1467, involved the question of whether an employment relationship existed between the taxpayers and certain other persons, under the taxing provisions of the Social Security Act. The Supreme Court there said:

"As the federal social security legislation is an attack on recognized evils in our national economy, a constricted interpretation of the phrasing by the courts would not comport with its purpose. Such an interpretation would only make for a continuance, to a considerable degree, of the difficulties for which the remedy was devised and would invite adroit schemes by some employers and employees to avoid the immediate burdens at the expense of the benefits sought by the legislation."

Judge Rutledge in a separate opinion, wherein he agreed with the result reached by the court in the Silk case, said:

"I agree with the Court's views in adopting this (the broader and more factual) approach and that the balance in close cases should be cast in favor of rather than against coverage, in order to fulfil the statute's broad and beneficent objects. A narrow, constricted construction in doubtful cases only goes, as indeed the opinion recognizes, to defeat the Act's policy and purposes pro tanto."

In the Silk case the Supreme Court continued:

"The problem of differentiating between employee and an independent contractor or between an agent and an independent contractor has given difficulty through the years before social legislation multiplied its importance. When the matter arose in the administration of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., we pointed out that the legal standards to fix responsibility for acts of servants, employees or agents had not been reduced to such certainty that it could be said there was 'some simple, uniform and easily applicable test.' The word 'employee,' we said, was not there used as a word of art, and its content in its context was a federal problem to be construed 'in the light of the mischief to be corrected and the end to be attained.' We concluded that, since that end was the elimination of labor disputes and industrial strikes, 'employees' included workers who were such as a matter of economic reality. The aim of the Act was to remedy the inequality of bargaining power in controversies over wages, hours and working conditions. We rejected the test of the 'technical concepts pertinent to an employer's legal responsibility to third persons for the acts of his servants.' This is often referred to as power of control, whether exercised or not, over the manner of performing service to the industry. Restatement of the Law, Agency, § 220. We approve the statement of the National Labor Relations Board that 'the primary consideration in the determination of the applicability of the statutory definition is whether effectuation of the declared policy and purposes of the Act comprehend securing to the individual the rights guaranteed and protection afforded by the Act.' National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 120, 123, 124, 128, 131, 64 S.Ct. 851, 855, 856, 857, 859, 860, 88 L.Ed. 1170.

"Application of the social security legislation should follow the same rule that we applied to the National Labor Relations Act in the Hearst case. This, of course, does not leave courts free to determine the employer-employee relationship without regard to the provisions of the Act. The taxpayer must be an 'employer' and the man who receives wages an 'employee.' There is no indication that Congress intended to change normal business relationships through which one business organization obtained the services of another to perform a portion of production or distribution. Few businesses are so completely integrated that they can themselves produce the raw material, manufacture and distribute the finished product to the ultimate consumer without assistance from independent contractors. The Social Security Act was drawn with this industrial situation as a part of the surroundings in which it was to be enforced. Where a part of an industrial process is in the hands of independent contractors, they are the ones who should pay the social security taxes.

"The long-standing regulations of the Treasury and the Federal Security Agency (H. Doc. 595, 79th Cong., 2d Sess.) recognize that independent contractors exist under the Act. * * * Certainly the industry's right to control how 'work shall be done' is a factor in the determination of whether the worker is an employee or independent contractor. The Government points out that the regulations were construed by the Commissioner of Internal Revenue to cover the circumstances here presented. This is shown by his additional tax assessments. Other instances of such administrative determinations are called to our attention.

"So far as the regulations refer to the effect of contracts, we think their statement of the law cannot be challenged successfully. Contracts, however, 'skillfully devised,' Lucas v. Earl, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731, should not be permitted to shift tax liability as definitely fixed by the statutes.

"Probably it is quite impossible to extract from the statute a rule of thumb to define the limits of the employer-employee relationship. The Social Security Agency and the courts will find that degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation are important for decision. No one is controlling nor is the list complete. These unloaders and truckers and their assistants are from one standpoint an integral part of the businesses of retailing coal or transporting freight. Their energy, care and judgment may conserve their equipment or increase their earnings but Greyvan and Silk are the directors of their businesses.

\* \* \* \* \* \*

"Giving full consideration to the concurrence of the two lower courts in a contrary result, we cannot agree that the unloaders in the Silk case were independent contractors. They provided only picks and shovels. They had no opportunity to gain or lose except from the work of their hands and these simple tools. That the unloaders did not work regularly is not significant. They did work in the course of the employer's trade or business. This brings them under the coverage of the Act. They are of the group that the Social Security Act was intended to aid. Silk was in a position to exercise all necessary supervision over their simple tasks. Unloaders have often been held to be employees in tort cases."

I am of the opinion that the facts in the instant case establish that plaintiff had a right to and did exercise a reasonable measure of control over the methods and means of performing the tasks of the drivers here involved.

All drivers of taxicabs must be permitted a large amount of discretion and latitude in obtaining business, a condition traditional and inherent in the operation of cabs in cities. The designation or description by the parties of the relationship existing between them as anything other than that of employer-employee is immaterial, because I believe that the facts indicate that the relationship of employer-employee did in reality exist.

After a careful reading of the Silk case I am of the opinion that it is determinative

of the issue involved in the instant case. I believe that the relationship existing between the Cab Company and its drivers was in fact that of employer and employee, and consequently that they come within the provisions of the Social Security Act. The drivers here have no investment in the enterprise; and therefore no equipment to conserve, and no responsibility for investment or management. The only skill they are required to exercise is that of any person who drives a car in the congested traffic of a large city.

 In addition plaintiff, and not the drivers, possessed the indispensable prerequisite for engaging in the business of operating taxicabs for hire in Chicago, namely, the hack licenses, without which neither plaintiff nor its drivers could operate the taxicabs for hire. Since plaintiff obtained and possessed the hack licenses from the City of Chicago which licenses enabled it to operate a taxicab business for hire, it follows that it was only under plaintiff's hack licenses that the drivers were permitted to operate their cabs, which, I believe, it one of the determining factors in establishing that they were not in fact independent contractors, but rather they were plaintiff's employees, and that the fares they collected were wages.

Accordingly, the Court finds the issues in favor of the defendant.