WILLIAM E. MARCH and CARLA MARCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
March v. Commissioner
Docket No. 10047-77
United States Tax Court
T.C. Memo 1981-339; 1981 Tax Ct. Memo LEXIS 411; 42 T.C.M. (CCH) 283; T.C.M. (RIA) 81339; June 29, 1981
William E. March, pro se. David M. Kirsch, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $ 333.87 deficiency in petitioners' 1975 income tax. The issue for determination is whether petitioners are liable for the self-employment tax under section 1401. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. William E. (petitioner) and Carla M. [2] March resided in Miami, Florida, at the time they filed their petition. In 1975 petitioner served as a police officer for the City of Miami Police Department (the "Department"). As a member of the Department, petitioner contributed to, and participated in, the Miami *413 City Employees Retirement System. Miami police officers are exempt from social security tax under section 3121(b)(7). The Department permits its officers to accept off-duty employment. [3] Such employment may entail police-type activities or unrelated activities. The Department maintains control over all off-duty employment. Before accepting an off-duty job, an officer is required to obtain approval. Such approval depends on the absence of any conflict of interest with the City of Miami, the compatibility of the off-duty hours with the officer's regular assignments, and the type of work involved. The Department routinely disapproves all requests to work for private security agencies. On occasion private citizens or businesses (other than security agencies) will contact the Department seeking the services of a policeman. The requested services may be either short-term or continuous. It the Department is satisfied that the private party will be using the requested officer in a *414 police-type capacity, i.e., directing traffic, apprehending shoplifters or providing general security, [4] then the Department will circulate the job description among a list of officers who have expressed an interest in off-duty employment. The Department maintains a roster of officers who wish to obtain off-duty jobs. [5]
If an officer expresses an interest in a particular job description being circulated, the Department will advise him who to contact. The creation and continuation of an employment relationship depends on the officer and the private party requesting his services. [6] Either side may *415 voluntarily terminate that relationship. The specific dates and hours of such employment are established by the private party. [7] Payment for the off-duty services are made directly by the private party to the performing officer. [8]
The general nature of an off-duty officer's responsibilities are dictated by the private employer. However, much of the job's detail is left to the officer's discretion due to his training as a law enforcement officer. The Department does not involve itself with the operational aspects of off-duty jobs unless it is approached by an employer to solve a particular problem. Under those circumstances, the Department will give the off-duty officer certain guidelines to follow. The Department establishes a standard pay scale *416 for off-duty employment involving police-type functions and generally requires officers performing off-duty services to wear their uniforms and badges. All police officers must abide by the Department's rules and regulations during working and off-duty hours. An officer may be reprimanded for an infraction of those rules. For example, an officer who abandons an off-duty job without advising the Department could be reprimanded. In 1975 petitioner provided security services to a Burger King restaurant and to a Florida State Unemployment Office during his off-duty hours. [9] At both jobs petitioner wore his police uniform and badge. The Florida State Unemployment Office hired several off-duty officers including petitioner for security reasons. The manager of the Unemployment Office established the work hours for these officers and instructed them where to stand and what areas to watch. At the same time, the Department directed these officers to stay within the confines of the Unemployment Office and not to venture outside onto the *417 street. It was the Unemployment Office's policy to contact the Department whenever it had any problems concerning off-duty officers. [10]
In 1975 petitioner earned $ 4,226.25 from his off-duty jobs and included the amount on his 1975 income tax return. This amount was not included on the 1975 W-2 Form received from the City of Miami Police Department. Neither Burger King nor the Florida State Unemployment Office withheld any employment taxes with respect to this amount. In his statutory notice, respondent determined that petitioner owed self-employment taxes on the $ 4,226.25 earned from his off-duty employment. OPINION In 1975 petitioner, William March, was employed as a member of the City of Miami Police Department. During his off-duty hours petitioner provided security services to a Burger King restaurant and to a Florida State Unemployment Office. The issue for decision is whether the $ 4,226.25 earned by petitioner from his off-duty jobs is subject to self-employment tax under section 1401. A self-employment tax is imposed on an individual *418 earning income from a trade or business, but not where the services he renders are performed as an employee. Sec. 1402. [11] In this case petitioner contends that he was an employee of the City of Miami Police Department (the "Department") while working his off-duty jobs. Furthermore, he argues that his off-duty earnings should be treated the same as his on-duty earnings for purposes of employment taxes, i.e., exempt from tax under section 3121(b)(7). [12] Respondent, of course, claims that petitioner was not an employee of the Department when performing his off-duty services, and we agree. [13]
*419 Section 3121(d) supplies several definitions of an employee. These definitions apply for purposes of the self-employment tax provisions. Sec. 1402(d). The pertinent definition for our purpose is found in section 3121(d)(2) which provides that an employee is "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." This definition is elaborated upon in section 31.3121(d)-1(c), Employment Tax Regs., which provides: (c) Common law employees. (1) Every individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee. (2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who *420 performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. * * * (3) Whether the relationship of employer and employee exists under the usual common *421 law rules will in doubtful cases be determined upon an examination of the particular facts of each case. The determination of petitioner's status is a factual inquiry, see, e.g., Air Terminal Cab, Inc. v. United States, 478 F. 2d 575, 578 (8th Cir. 1973), cert. denied 414 U.S. 909 (1973), upon which he bears the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. Although the issue is not free from doubt, we believe the preponderance of the evidence presented warrants the conclusion that, with respect to his off-duty employment, petitioner was not an employee of the Department. [14] A number of considerations lead us to this conclusion. First, the right to control an individual's *422 activities, not only as to results, but also as to details and means of performance, is fundamental to an employer-employee relationship. Air Terminal Cab, Inc. v. United States, 478 F. 2d 575, 579 (8th Cir. 1973); Radio City Music Hall Corp. v. United States, 135 F. 2d 715, 717-718 (2d Cir. 1943). We do not believe the Department possessed the requisite control over petitioner's off-duty employment activities. A close examination of the Department's role with respect to off-duty employment reveals the absence of this type of control. The nature of the work performed by the off-duty officer and its mode of execution were dictated by the needs of the hiring party and the officer's own discretion. [15] Furthermore, the dates and hours of off-duty employment were regulated by he hiring party and not by the Department. See Air Terminal Cab, Inc. v. United States, supra at 580. The Department did not become involved with the operational details of off-duty employment unless its advice was solicited by the hiring party. We see no reason why the Department would only provide guidance upon request if, in fact, it already possessed *423 the right to control the activities of the off-duty officers. [16]
*424 Second, implicit in an employer-employee relationship is the performance of services by the employee for the employer. See Party Cab Co. v. United States, supra at 93; sec. 31.3121(d)-1(c)(1), Employment Tax Regs. ("Every individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee." (Emphasis added)). An employee's services directly benefit the employer or his business. See Air Terminal Cab Co. v. United States, supra at 581. In the present situation, petitioner's off-duty services were performed for, and were directly beneficial to, Burger King and the State Unemployment Office. Although petitioner's off-duty services indirectly benefited the Department in keeping the peace and protecting property, this benefit is analogous to that derived from private security agencies. Yet no one would claim that employees of those private agencies are also police department employees. [17] *425 In the absence of any evidence that petitioner's off-duty services discharged the Department's obligation to supply private protection (compare Rev. Rul. 74-162, 1974-1 C.B. 297 (arrangement between private bank and police department)) or otherwise fulfilled its public safety function, we do not believe petitioner performed services for the Department in his off hours. We find support in this position by the disparate treatment accorded off-duty employment involving public safety, such as the presence of police officers at the Orange Bowl Parade. For these public safety events, off-duty officers are drafted to work and are compensated by the City of Miami.In contrast, off-duty jobs like those held by petitioner represent a voluntary association *426 between the individual officer and the private employer. Third, the right of selection and the power to discharge at will are indicia of an employee-employer relationship. See Saiki v. United States, 306 F. 2d 642, 649 (8th Cir. 1962); May Freight Service, Inc. v. United States, 462 F. Supp. 503, 508 (E.D. N.Y. 1978); Morish v. United States, 214 Ct. Cl. 166, 555 F.2d 794, 799 (1977); sec. 31.3121(d)-1(c)(2), Employment Tax Regs.Whether petitioner obtained off-duty employment or retained such employment was determined by the private party seeking his services. The Department served merely as an intermediary or referral service through which officers were notified of the existence of off-duty jobs. Cf. Saiki v. United States, supra at 652 (booking agents); Rev. Rul. 56-154, 1956-1 C.B. 447 (police department recommending officers for off-duty employment). Fourth, the mode *427 and source of payment may indicate whether an employer-employee relationship exists. See Saiki v. United States, 306 F. 2d 642, 652 (8th Cir. 1962); Party Cab Co. v. United States, 172 F. 2d 87, 93 (7th Cir. 1949). Where, as in this case, petitioner performs off-duty services for a private employer and is paid by that employer, it would seem to be anomalous to categorize a third party, the Department, as petitioner's employer with respect to those services. Id. Consistent with this view is the exclusion of petitioner's off-duty earnings from the W-2 Form issued by the Department. In close cases, of which this is one, there are bound to be factors pointing in the opposite direction. The general requirement that officers wear their uniforms and badges while on off-duty employment and the establishment of standard pay rates by the Department for off-duty jobs are two of these factors. See also, notes 16 and 17, supra. [18] The aggregate of these factors, however, do not tip the scale in petitioner's favor. [19]
*428 To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. Carla March is a party solely by virtue of having filed a joint return with her husband.↩
3. The term "employment" and "employer" are used in the findings of fact for convenience. Their use is not meant to imply the existence or non-existence of an employer-employee relationship.↩
4. Certain jobs such as "bouncers" are not considered to be appropriate for off-duty employment. ↩
5. The Department is under no obligation to supply policemen to these private parties. Moreover, an officer is under no obligation to accept these jobs. Off-duty employment is purely voluntary and has no effect on an officer's regular assignments. An exception, however, is made for "big events" involving public safety, e.g↩., the Orange Bowl Parade. Officers are drafted to work these events and are compensated directly by the City of Miami for these off-duty services.
6. The Department, however, may recommend that an officer terminate his off-duty employment if he violates department rules and re gulations during those off-duty activities. ↩
7. Of course, the times and dates must be compatible with the officer's regular assignments. ↩
8. The City of Miami refuses to be held responsible for these payments because the off-duty employment is above and beyond an officer's normal tour of duty.↩
9. For purposes of this opinion the parties have stipulated that petitioner was not an employee of either Burger King or the State of Florida.↩
10. For example, the Unemployment Office would notify the Department if an off-duty officer failed to appeal for work.↩
11. SEC. 1402. DEFINITIONS. (a) NET EARNINGS FROM SELF-EMPLOYMENT.--The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions * * * (b) SELF-EMPLOYMENT INCOME.--The term "self-employment income" means the net earnings from self-employment derived by an individual * * * during any taxable year * * * (c) TRADE OR BUSINESS.--The term "trade or business", when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 162 * * *, except that such term shall n ot include-- (3) the performance of service by an individual as an employee * * * ↩
12. Section 3121(b)(7)↩ generally excludes from social security taxes those wages received with respect to services "performed in the employ of a state, or any political subdivision thereof * * *." Respondent does not dispute that petitioner's on-duty earnings are exempt from social security taxes. 13. The parties stipulated that petitioner was not an employee of either the Burger King restaurant or the Florida State Unemployment Office. See note 9, supra. The issue, as framed by the parties, is whether petitioner was an employee of the City of Miami Police Department while working his off-duty jobs. If not, then he will be deemed to be self-employed for purposes of section 1402↩.
14. We offer no comment as to the actual status of petitioner's off-duty activities. We note in passing, however, that our holding does not necessarily imply that petitioner was an independent contractor. See Party Cab Co. v. United States, 172 F. 2d 87, 90 (7th Cir. 1949), revg. 75 F. Supp. 307↩ (N.D. Ill. 1947).
15. For example, the Florida State Unemployment Office instructed officers, like petitioner, where to stand and what areas to watch. Any further details were left to the officer's discretion due to his expertise. Although the Department directed petitioner not to go outside the office, this instruction was not directly related to his performance which took place inside the Unemployment Office. ↩
16. Petitioner correctly points out that the Department did wield and exercise a large degree of control over off-duty employment in that all such employment had to meet its approval. However, it is important to keep in mind that two types of jobs (on-duty jobs and off-duty jobs) exist simultaneously in this case. There is no dispute that an employer-employee relationship existed between petitioner and the Department with respect to his regular, on-duty job. In our opinion, the control vested in the Department with respect to off-duty employment relates solely to this on-duty, employer-employee relationship. It does not represent the Department's attempt to control the details of the off-duty employment. For example, Department approval of off-duty employment is directly attributable to the Department's desire to ensure the absence of any interference with an officer's on-duty activities and to preserve the department's image. This type of broad control is qualitatively different from the type of direct, operational control implicit in the employer-employee relationship. See Party Cab Co. v. United States, 172 F. 2d 87, 92-93 (7th Cir. 1949) Similarly, we recognize that petitioner's off-duty activities may have been constrained by Department rules and regulations. The general application of those rules, however, relates to petitioner's status s a member of the Department and is not specifically aimed at controlling the details of petitioner's activities while working at Burger King or the State Unemployment Office. For example, the mere fact that petitioner might be reprimanded by the Department if he abandons his off-duty job without notice does not necessarily mean the Department controls his off-duty employment activities. Rather, any conduct unbecoming a police officer, such as abandoning a job, would presumably violate the Department's rules and regulations whether such conduct related to off-duty employment or not. Petitioner also emphasizes the fact that the State Unemployment Office contacted the Department whenever it had problems with off-duty officers. According to petitioner, this demonstrates the Department's right to control the officers. There is no evidence in the record, however, that the Unemployment Office was obligated to funnel its problems through the Department. Whether it did so out of courtesy to the Department or for any other reason is unclear. However, the testimony of the police officer in charge of the Department's off-duty employment section indicates that private employers were not restricted in their handling of employment problems and that off-duty officers served at the discretion of those who hired them.↩
17. The mere fact that off-duty officers are empowered to perform those law enforcement functions that they normally perform during on-duty hours (see Fla. Stat. Ann. § 790.052↩ (West)) does not alter our position. The possibility that circumstances may warrant an off-duty officer to assume his on-duty responsibilities is incidental to his off-duty activities and does not automatically make him a 24-hour per day employee.
18. We hesitate to read too much into these countervailing factors in the absence of evidence as to their underlying rationales. For example, requiring off-duty officers to wear uniforms may merely represent the Department's endorsement of petitioner's activities as opposed to the employment of his services. ↩
19. In support of his position, petitioner also cites us to State v. Robinson, 379 So. 2d 712 (Dist. Ct. App. 1980), State v. Williams, 297 So. 2d 52 (Dist. Ct. App. 1974), and City of Miami v. Brownlow, Industrial Relations Commission No. 2-2904. All of these cases involve the status of police officers engaged in the performance of off-duty employment. State v. Robinson and State v. Williams, supra, deal with an off-duty officer's confrontation with criminal activity and City of Miami v. Brownlow↩, deals with an off-duty officer's claim for workmen's compensation. None of the cases, however, involve the applicability of employment taxes to off-duty jobs and, therefore, are distinguishable.